UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

TECHNOLOGY INSURANCE COMPANY, INC.,
as reinsurer and successor to Tower Insurance
Company of New York,                                    Civil Action No.: 1:21-cv-07387

                          Plaintiff,

        -against-

PHILADELPHIA INDEMNITY INSURANCE
COMPANY,

                          Defendant.
-------------------------------------------------------------x

_____

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF TECHNOLOGY
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

_____

                                    KENNEDYS CMK LLP
                                    Attorneys for Plaintiff
                                    570 Lexington Avenue – 8th Floor
                                    New York, New York 10022
                                    212-252-0004

Of Counsel:
Max W. Gershweir

TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................. i

TABLE OF AUTHORITIES ............................................. ii

PRELIMINARY STATEMENT ........................................... 1

STATEMENT OF FACTS AND OF THE CASE ............................... 4

   The Premises ................................................... 4

   The PIIC Policy ................................................ 5

   The Tower Policy ............................................... 7

   Relationship between Tower and Technology ...................... 8

   The Ramos Claim ............................................... 10

ARGUMENT ......................................................... 20

   I.   PIIC's late-notice defense is meritless on multiple grounds ....... 20

      A. PIIC waived its late-notice defense by failing to include it in its
         second disclaimer letter ........................................ 20

      B. PIIC was not prejudiced by Hinde's notice delay .................. 23

   II.  New York case law establishes that the standard additional-insured
      endorsement at issue here covers the lessor for all accidents occurring
      on public sidewalks abutting the premises leased to the named insured .... 27

   III. Since the Underlying Action complaint alleges Ramos was injured due
      to a hazardous condition on the sidewalk abutting the leased premises,
      PIIC had a duty to defend Hinde ................................. 31

   IV. Since Ramos's claim was based exclusively on his allegation that he was
      injured due to a hazardous condition on the public sidewalk abutting
      the leased premises, PIIC also had a duty to indemnify Hinde ........... 32

   V.  The PIIC Policy is primary to the Tower Policy with respect to Hinde's
      coverage in the Underlying Action given the policies' respective "other
      insurance" clauses, thus requiring PIIC to reimburse Technology in
      full for the costs it has incurred defending and indemnifying Hinde ........ 35

TABLE OF CONTENTS (Cont'd.)

Page

VI.  Technology is the proper plaintiff .................................................................    36

VII. Technology has established it is entitled to the monetary relief it seeks,
     plus interest from the dates of payment ...........................................    37

CONCLUSION ...........................................................................................    39

TABLE OF AUTHORITIES

Page(s)

Cases

*76-01 37th Ave. Realty Corp. v. Dongbu Ins. Co., Ltd.*, No. 161256/13,
   2015 WL 5643614 (Sup. Ct. N.Y. County Sep. 25, 2015), *rev'd*, 146 A.D.3d 448 (1st
   Dep't 2017) ...................................................................28, 30, 33

*Am. Home Assur. Co. v. Starr Tech. Risks Agency, Inc.*,
   No. 600263/06, 2006 WL 304746 (Sup. Ct. N.Y. Cty. Feb. 6, 2006)......................... 37

*Ambrosio v. Newburgh Enlarged City Sch. Dist.*,
   5 A.D.3d 410 (2d Dep't 2004) ........................................................ 21

*Benjamin Shapiro Realty Co. v. Agricultural Ins. Co.*,
   287 A.D.2d 389 (1st Dep't 2001).................................................... 22

*BP Air Conditioning Corp. v. One Beacon Ins. Group*,
   8 N.Y.3d 708 (2007)............................................................. 31, 32

*Bridge St. Contracting Inc. v. Everest Nat. Ins. Co.*,
   132 A.D.3d 500 (1st Dep't 2015)..................................................... 27

*Burlington Ins. Co. v. NYCTA*,
   29 N.Y.3d 313 (2017) ............................................................. 27-28

*Castillo v. Prince Plaza, LLC*,
   142 A.D.3d 1127 (2d Dep't 2016) .................................................... 26

*Century Indem. Co. v. Aero-Motive Co.*,
   336 F.Supp.2d 739 (W.D. Mich. 2004)................................................ 24

*City of New York v. Cont'l Cas. Co.*,
   27 A.D.3d 28 (1st Dep't 2005)..................................................... 26, 27

*City of New York v. Zurich-Am. Ins. Grp.*,
   27 A.D.3d 609 (1st Dep't 2006)...................................................... 38

*Donato v. Utica First Ins. Co.*, No. 152419/12, 2016 WL 3902273 (Sup. Ct. N.Y. County
   Jul. 15, 2016), *aff'd*, 146 A.D.3d 481 (1st Dep't 2017) ...............................28, 30, 34, 35

*Downwyn Farms v. Ohio Ins. Guar. Assn.*,
   Nos. 90CA004870, 90CA004872, 1991 WL 60688 (Ohio Ct. App. 9th Dist. Lorain
   County Apr. 17, 1991)............................................................... 24

*Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*,
   261 Wis. 2d 4 (Wis. 2003) .......................................................... 24

TABLE OF AUTHORITIES (Cont'd.)

Page(s)

Cases

*Frank v. Cont'l Cas. Co.,*
   123 A.D.3d 878 (2d Dep't 2014) ................................................................28, 29, 30, 33

*Halsey v. Fireman's Fund Ins. Co.,*
   68 Or. App. 349 (Ct. App Or. 1984) .............................................................................. 24

*Harleysville Ins. Co. v. Utica Ins. Co.,*
   38 A.D.3d 1364 (4th Dep't 2007) .................................................................................. 36

*Hester v. Navigators Ins. Co.,*
   917 F. Supp. 2d 290 (S.D.N.Y. 2013) ........................................................................... 21

*Hout v. Coffman,*
   126 A.D.2d 973 (4th Dep't 1987) .................................................................................. 32

*Isidore Margel Trust Mitzi Trustee v. Mt. Hawley Ins. Co.,*
   195 A.D.3d 799 (2d Dep't 2021) .......................................................................28, 29, 33

*Kraemer Bldg. Corp. v. Scottsdale Ins. Co.,*
   136 A.D.3d 1205 (3d Dep't 2016) ................................................................................. 21

*L&B Estates, LLC v. Allstate Ins.,*
   71 A.D.3d 834 (2d Dep't 2010) .........................................................................28, 30, 33

*Maldonado v. Kissm 518 Ninth Corp.,*
   18 A.D.3d 627 (2d Dep't 2005) ..................................................................................... 33

*Morris Cerrullo World Evangelism, Inc.,*
   269 A.D.2d 275 (1st Dep't 2000) .................................................................................. 33

*Mt. Vernon Fire Ins. Co. v. Creative Hous. Ltd.,*
   88 N.Y.2d 347 (1996) ..................................................................................................... 28

*Nat'l Am. Ins. Co. of Cal. v. Certain Underwriters at Lloyd's London,*
   93 F.3d 529 (9th Cir. 1996) ........................................................................................... 24

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Greenwich Ins. Co.,*
   103 A.D.3d 473 (1st Dep't 2013) .................................................................................. 39

*N.J. Mfrs. Ins. Grp. v. Narrangasset Bay Ins. Co.,* No.,
   17-011112, 2018 WL 6427868 (D. N.J. Dec. 7, 2018) .................................................. 37

*Newman v. Scottsdale Ins. Co.,*
   370 Mont. 133 (Mont. 2013) ........................................................................................ 24

iv

TABLE OF AUTHORITIES (Cont'd.)

Page(s)

Cases

*Olin Corp. v. Ins. Co. of N. Am.*,
   966 F.2d 718 (2d Cir. 1992) ........................................................................ 21

*Pecker Iron Works of N.Y., Inc. v. Traveler's Ins. Co.*,
   99 N.Y.2d 391 (2003) ................................................................................. 25

*Prashker v. U.S. Guar. Co.*,
   1 N.Y.2d 584 (1956) .................................................................................... 32

*Regal Constr. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
   15 N.Y.3d 34 (2010) .............................................................................. 28, 32

*Safeguard Scientifics, Inc. v. Liberty Mut. Ins. Co.*,
   766 F. Supp. 324 (E.D. Pa. 1991) .............................................................. 24

*Seaboard Sur. Co. v. Gillette Co.*,
   64 N.Y.2d 304 (1984) ................................................................................. 31

*Serio v. Pub. Serv. Mut. Ins. Co.*,
   7 A.D.3d 277 (1st Dep't 2004) ................................................................... 38

*Servidone Const. Corp. v. Security Ins. Co. of Hartford*,
   64 N.Y.2d 419 (1985) ................................................................................. 32

*Shell Oil Co. v. Winterthur Swiss Ins. Co.*,
   12 Cal. App. 4th 715 (Cal. Ct. App. 1993) ............................................ 24, 25

*Sherwood Brands, Inc. v. Hartford Acc. and Indem. Co.*,
   347 Md. 32 (Md. 1997) .............................................................................. 24

*Sport Rock Int'l, Inc. v. Am. Cas. Co. of Reading, PA*,
   65 A.D.3d 12 (1st Dep't 2009) ................................................................... 35

*State of N.Y. v. AMRO Realty Corp.*,
   936 F.2d 1420 (2d Cir. 1991) ..................................................................... 20

*Strickler v. Huffine*,
   421 Pa. Super. 463 (Pa. Super. Ct. 1992) .................................................. 24

*Tower Ins. Co. of N.Y. v. Leading Ins. Group Ins. Co. Ltd.*,
   134 A.D.3d 510 (1st Dep't 2015) ....................................................... 28, 30, 34

*U.S. Fire Ins. Co. v. Fed. Ins. Co.*,
   858 F.2d 882 (2d Cir. 1988) ....................................................................... 39

TABLE OF AUTHORITIES (Cont'd.)

Page(s)

Cases

*USF Ins. Co. v. Clarendon Am. Ins. Co.,*
  No. 05-04138, 2006 WL 8434386 (C.D. Cal. Feb. 22, 2006) ....................................... 37

*Village of Brewster v. Virginia Sur. Co., Inc.,*
  70 A.D.3d 1239 (3d Dep't 2010) .................................................................. 36

*Vucetovic v. Epsom Downs, Inc.,*
  10 N.Y.3d 517 (2008) ............................................................................... 31

*Wausau Underwriters Ins. Co. v. Old Republic Gen. Ins. Co.,*
  122 F.Supp.3d 44 (S.D.N.Y. 2015) ............................................................... 33

*Wesco Ins. Co. v. Travelers Prop. Cas. Co. of Am.,*
  188 A.D.3d 476 (1st Dep't 2020) .............................................................28, 29, 32, 34

*ZKZ Assocs. v. CNA Ins. Co.,*
  224 A.D.2d 174 (1st Dep't 1996), aff'd, 89 N.Y.2d 990 (1997) ...............................28, 29

**Statutes**

N.Y. Ins. Law § 3420(a)(5) ........................................................................ 21, 23

N.Y. Ins. Law § 3420(c)(2)(A)-(C) .............................................................. 23

N.Y. CPLR § 5001 .................................................................................... 39

**Regulations**

Administrative Code of the City of New York § 7-210 .......................................... 28, 30, 31

Administrative Code of the City of New York § 19-152 ........................................ 31

**Other Authorities**

Windt, 1 Insurance Claims and Disputes § 1:4 (6th Ed.) .................................... 24

## Preliminary Statement

Plaintiff Technology Insurance Company, Inc., submits this memorandum of law in support of its motion for summary judgment against defendant Philadelphia Indemnity Insurance Company ("PIIC"):

a.   declaring that PIIC breached its duty to defend Hinde Development LLC in an action captioned *Edwin Ramos v. Hinde Development LLC, et al.*, in the Supreme Court of the State of New York, Bronx County, under Index No. 25584/2015e ("the Underlying Action"), as an additional insured under an insurance policy issued by PIIC to Puerto Rican Family Institute, Inc. ("PRFI") numbered PHPK1201832, effective July 6, 2014, to July 6, 2015, ("the PIIC Policy");

b.   declaring that PIIC breached its duty to indemnify Hinde in the Underlying Action under the PIIC Policy;

c.   declaring that Hinde's coverage under the PIIC Policy is primary to its coverage under an insurance policy issued by Tower Insurance Company of New York, Technology's predecessor-in-interest ("the Tower Policy");

d.   awarding Technology the costs incurred to defend and indemnify Hinde in the Underlying Action in the amount of $121,278.70, plus interest;

e.   and such other and further relief as the Court deems proper.

This action involves a dispute over whether Hinde, a building owner covered as a named insured under the Tower Policy, is entitled to additional-insured coverage under the PIIC Policy, a commercial general liability policy PIIC issued to PRFI, Hinde's tenant, as respects the claims against Hinde in the Underlying Action.

In the Underlying Action, the plaintiff, Edwin Ramos, sought damages against Hinde and PRFI for injuries he allegedly sustained when he fell due to a defective condition on a public sidewalk abutting the premises Hinde leased to PRFI. More specifically, Ramos alleges he tripped over misleveled sidewalk cellar doors leading to the premises' basement.

The PIIC Policy includes an industry-standard additional-insured lessor provision covering Hinde "with respect to liability arising out of the ownership, maintenance or use of" the premises leased to PRFI. Under well-settled New York law construing this provision, a property owner's liability for abutting-public-sidewalk accidents is deemed to arise out of the ownership or use of the leased property, regardless of any other circumstance, such as which party was obligated to maintain the sidewalk or whether the injured person was injured while entering or exiting the premises.

Nevertheless, PIIC refused to defend or indemnify Hinde in the Underlying Action. In its first letter addressing the issue, PIIC disclaimed based on a purported lack of coverage due to PRFI's lack of responsibility for the cellar doors and based on prejudicial late notice, citing the fact that a default judgment had been entered against Hinde when the matter was tendered to PIIC. After Technology re-tendered to PIIC, by which time the default judgment against Hinde had been vacated, PIIC cited only the latter ground as a basis for disclaiming coverage.

Due to PIIC's disclaimer, Technology defended and indemnified Hinde, settling the matter on its behalf for $88,000, and incurring $33,278.70 in defense costs.

Technology is entitled to summary judgment declaring that PIIC breached its duty to defend and indemnify Hinde in the Underlying Action based on the well-settled law that the subject additional-insured provision covers the lessor in all abutting-sidewalk

trip-and-fall cases like this on and because PIIC's late-notice defense lacks merit on multiple grounds, including waiver based on PIIC's omission of the defense from its second disclaimer letter, and lack of prejudice, based primarily on its admission that it would not have defended Hinde even had it promptly tendered coverage and on the fact that PRFI provided prompt notice of the occurrence and suit, allowing PIIC to investigate the matter promptly, and that the default judgment against Hinde was vacated.

Moreover, since Hinde's coverage under the PIIC Policy is primary to its coverage under the Tower Policy based on the policies' respective "other insurance" provisions, PIIC must reimburse Technology in full for the amounts spent to defend and indemnify Hinde in the Underlying Action, plus interest.

Finally, contrary to PIIC's contention, Technology, as the Tower Policy's reinsurer, is the proper plaintiff here because, through agreements predating this matter, Tower, which was liquidated in 2016, assigned to Technology all duties and benefits under the policy, and Technology funded the account administered by its general managing agent from which all defense and indemnity payments sought herein were paid.

## Statement of Facts and of the Case

### The Premises

At all times relevant herein, Hinde Development LLC owned the premises known as 4119-4133 Third Avenue, Bronx, New York ("the Premises").[1]

Hinde entered into a lease dated March 23, 1998 ("the Lease"), with Puerto Rican Family Institute, Inc. ("PRFI") under which it leased to PRFI a portion of the Premises, including the entire ground floor of the building thereon ("the Building"). The Lease has been extended on multiple occasions and was effective on December 24, 2014.[2]

Throughout the term of the Lease, PRFI has been the only tenant and occupant of the Building, which consists of a ground-floor level and two basements. One of the basements is accessible from the public sidewalk abutting the front of the Building, through sidewalk cellar doors.[3]

Throughout the term of the Lease, the sidewalk cellar doors have been locked by a padlock to which only PRFI has the keys and PRFI has had exclusive use of the basement to which the doors lead.[4]

The Lease grants PRFI "a license to use the entire building and adjacent vacant lots," and permits it to "use the basement area below the demised Premises for storage of supplies only, and for no other purpose."[5]

---

[1] Adler Decl. ¶ 2.
[2] *Id.* at ¶ 3.
[3] *Id.* at ¶ 4.
[4] *Id.* at ¶ 5.
[5] Lease, Adler Decl. Ex. 1, at ¶ 61.

The Lease requires PRFI to procure general liability insurance "protecting the Landlord against any liability whatsoever, occasioned by accident or disaster on or about the Premises, or any appurtenances thereto."[6]

**The PIIC Policy**

PIIC issued a commercial general liability insurance policy bearing number PHPK1201832, effective July 6, 2014, to July 6, 2015, covering PRFI as a named insured, in connection with its occupancy of the Premises, subject to the policy's terms and conditions ("the PIIC Policy").[7]

The PIIC Policy includes the following provisions:

**SECTION I — COVERAGES**

**COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. . . .

    **b.** This insurance applies to "bodily injury" or "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "bodily injury" or "property damage" occurs during the policy period; . . . .[8]

**SECTION IV — COMMERCIAL GENERAL LIABILITY COVERAGE CONDITIONS**

---

[6] *Id.* at ¶ 21.A.

[7] PIIC Policy, Gershweir Decl. Ex. A.

[8] *Id.* at New York Changes — Commercial General Liability Coverage Form, § I, ¶ 1 (D00253).

. . .

## 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

    (1) How, when and where the "occurrence" or offense took place;
    (2) The names and addresses of any injured persons and witnesses; and
    (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

    (1) Immediately record the specifics of the claim or "suit" and the date received; and
    (2) Notify us as soon as practicable.

c. You and any other involved insured must:

    (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
    . . .

e. Notice given by or on behalf of the insured, written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered notice to us.[9]

## 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are as follows:

---

[9] *Id.* at Commercial General Liability Coverage Form, § IV, ¶ 4, p. 11 (D00262-263), as modified by New York Changes — Commercial General Liability Coverage Form, ¶ C., p. 2 (D00288).

**a. Primary Insurance**

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. . . .

**b. Excess Insurance**
(1) This insurance is excess over:
. . .
   (b) Any other primary insurance available to you covering liability for damages arising out of the premises . . . for which you have been added as an additional insured by attachment of an endorsement.[10]

K.  Additional Insureds
. . .

**Section II − Who Is An Insured** is amended as follows:
. . .
   2.  Each of the following is also an insured:
. . .

   **f.  Managers, Landlords, or Lessors of Premises** — Any person or organization with respect to their liability arising out of the ownership, maintenance or use of that part of the premises leased or rented to you subject to the following additional exclusions:

   This insurance does not apply to:

   (1) Any "occurrence" which takes place after you cease to be a tenant in that premises; or
   (2) Structural alterations, new construction or demolition operations performed by or on behalf of that person or organization.[11]

**The Tower Policy**

Tower Insurance Company of New York issued an insurance policy to Hinde

Development, LLC, bearing policy number CPC 7004982 04 01, effective May 6, 2014, to

---

[10] *Id*. at Commercial General Liability Coverage Form, § IV, ¶ 4, p. 11 (D00263).
[11] *Id*. at General Liability Deluxe Endorsement: Human Services, ¶ K.2.f., p. 7 (D00313).

May 6, 2015 ("the Tower Policy"), which affords commercial general liability coverage to Hinde as the owner of the Premises, subject to its terms and conditions.[12]

The Tower Policy includes the same "Insuring Agreement," "Duties In The Event Of Occurrence, Offense, Claim Or Suit," and "Other Insurance" provisions as the PIIC Policy quoted above. *Id.* at Commercial General Liability Coverage Form, pp. 1, 10, 11.

In addition to those provisions, the Tower Policy includes a "Cut-Through Endorsement" stating in part:

> In the event that the Company [Tower] is declared insolvent by a court of competent jurisdiction and is unable to pay a loss(es) under the Policy occurring on or after the Effective Date of this Endorsement [August 5, 2014] (a 'Covered Loss'), (A) the Reinsurer [Technology] will be liable to the Insured for such Covered Loss and will make payment directly to the Insured, subject to the terms, limits and conditions contained in the Policy . . . .[13]

**Relationship between Tower and Technology**

Technology is Tower's reinsurer as respects the Tower Policy pursuant to a Commercial Lines Cut-Through Quota Share Reinsurance Agreement dated January 3, 2014 ("the Reinsurance Agreement").[14]

Under the Reinsurance Agreement, "each Ceding Company [defined to include Tower] hereby cedes, and the Reinsurer [Technology] hereby assumes, one hundred percent (100%) of all Losses [defined to include both defense and indemnity payments] . . . for which such Ceding Company is liable in respect of the Subject Policies [defined to includes all policies issued by Tower on or after January 1, 2014, e.g., the Tower Policy]."[15]

---

[12] Tower Policy, Aptman Decl. Ex. 1.
[13] *Id.* at Cut-Through Endorsement.
[14] Aptman Decl. ¶ 3.
[15] Reinsurance Agreement, Aptman Decl. Ex. 2, at Art. 2, § 2.2(a), p. 7.

The Reinsurance Agreement allows Technology to "at any time, assume authority from the Ceding Companies in all matters relating to the administration of the Insurance Contracts [defined to include the "Subject Policies" and thus the Tower Policy] and any claims thereunder, including but not limited to the authority (i) to pay and adjust Claims on behalf of such Ceding Company."[16]

The Reinsurance Agreement also states that, "in furtherance of the Reinsurer's right to assume authority for administration of Insurance Contracts, each Ceding Company hereby appoints the Reinsurer as its attorney-in-fact with respect to the rights, duties and privileges and obligations of such Ceding Company in and to the Insurance Contracts, including without limitation, the power to service such contracts, to adjust, defend, settle and to pay all Claims, [and] to recover salvage and subrogation for any losses incurred."[17]

Per the CastlePoint National Insurance Company Conservation Agreement dated July 28, 2016, to which Technology, the Insurance Commissioner of the State of California as Conservator of CastlePoint National Insurance Company (into which Tower had been merged), and AmTrust North America, Inc., among others, are party, CastlePoint assigns to Technology, "as its direct obligation to the applicable policyholders or other obligees of the Company [CastlePoint], all of the liabilities of the Company reinsured under [the Reinsurance Agreement]," and further states that Technology "shall become a direct obligor with respect to the insurance thereunder," identified as "each insurance policy reinsured under [the Reinsurance Agreement]."[18]

---

[16] *Id*. at Art. 4(a), pp. 13-14.
[17] *Id.*, at p. 14.
[18] Conservation Agreement, Aptman Decl. Ex. 3, at § 9.1.11, p. 39.

By Order dated March 30, 2017, of the Superior Court of California ("the Liquidation Order"), CastlePoint was found to be insolvent and liquidated.[19]

Although the Liquidation Order vested in the Insurance Commissioner of the State of California the right to control CastlePoint's assets and thus to control the payment of claims under certain policies issued by Tower, those policies issued by Tower that were reinsured by Technology under the Reinsurance Agreement, such as the Tower Policy, are not subject to the Liquidation Order or thus the Commissioner's control.[20]

At all times relevant here, Technology had no employees and operated exclusively through AmTrust as its general managing agent, including as respects the Tower Policy and any claims thereunder. This is also true of multiple other insurance companies that, like Technology, are subsidiaries of AmTrust Financial Services, Inc.[21]

Consistent with AmTrust's role as Technology's general managing agent, the bank account through which Technology made expense and claim payments under any policy issued by Tower and reinsured under the Reinsurance Agreement, including the Tower Policy, was held in the name of and administered by AmTrust but funded by Technology.[22]

**The Ramos Claim**

PIIC was first notified on March 3, 2015, that Edwin Ramos was claiming to have been injured in front of the Premises on December 24, 2014, when it received from J. A. Faccibene & Associates, Inc., the insurance agent identified on the PIIC Policy, a loss

---

[19] Liquidation Order, Aptman Decl. Ex. 4.
[20] Aptman Decl. ¶ 7.
[21] *Id*. ¶ 8.
[22] Aptman Decl. ¶ 9.

notice form and letter from Ramos's counsel dated February 20, 2015, to PRFI and Hinde, claiming that their negligence caused the alleged accident.[23]

On March 4, 2015, the PIIC adjuster assigned to handle the claim, Verona Cruz, during a telephone call with a paralegal from the office of the attorney representing Ramos as respects the claim, was advised that "the cellar doors in the sidewalk to the insured location was the cause of the fall" and that "Hinde Development is the landlord or property owner of record."[24]

By email on April 22, 2015, Yolanda Alicea-Winn, PRFI's Vice President, provided PIIC "with contact information for the landlord," identifying a person named Abraham and his cell phone number.[25]

Abraham Strulovitch of Webster AV Management, LLC co-manages the Premises.[26]

On May 4, 2015, Cruz called Abraham, who advised her that there had been a repair to the sidewalk cellar doors.[27]

By email on May 4, 2015, to shimon@websteravemanagement.com, Cruz requested information regarding the maintenance and repair of the cellar doors.[28]

---

[23] Cruz dep. tr., Gershweir Decl. Ex. B, at pp. 35-37; PIIC claim notes, Gershweir Decl. Ex. C, at p. 35; March 3, 2015 fax transmission, Gershweir Decl. Ex. D.
[24] PIIC claim notes, Gershweir Decl. Ex. C, at p. 34.
[25] Cruz dep. tr., Gershweir Decl. Ex. B, at pp. 48-49; printout of an April 22, 2015, and May 4, 2015, email exchange, Gershweir Decl. Ex. E.
[26] Adler Decl., ¶ 2.
[27] PIIC claim notes, Gershweir Decl. Ex. C, at p. 33; Cruz dep. tr., Gershweir Decl. Ex. B, at pp. 49-50.
[28] PIIC claim notes, Gershweir Decl. Ex. C, at p. 33; Cruz dep. tr., Gershweir Decl. Ex. B, at pp. 48-49; April 22, 2015, and May 4, 2015, email exchange printout, Gershweir Decl. Ex. F.

On May 20, 2015, Cruz spoke again with Abraham "at Webster Avenue Management," who provided additional information about the sidewalk cellar doors, including that a gap between the doors had been fixed.[29]

By email on May 20, 2015, again to shimon@websteravemanagement.com, and addressed to Abraham, Cruz requested a copy of the repair bill for the sidewalk cellar doors and photographs of the doors before and after the repair.[30]

By email to Cruz the same day from shimon@websteravemanagement.com, the "before" and "after" photographs of the sidewalk cellar doors and a repair bill for replacing the doors was provided to PIIC.[31]

On January 13, 2016, PIIC was first notified that Ramos had filed suit when Cruz received a phone call from Ramos's counsel so advising.[32]

By email to Cruz the same day, Ramos's counsel's office forwarded to PIIC a summons and complaint filed on October 9, 2015, in the Supreme Court of the State of New York, County of Bronx, Index No. 25584/2015, bearing the caption *Edwin Ramos v. Hinde Development, LLC and Puerto Rican Family Institute, Inc.* ("the Underlying Action"), and proof of service of the pleading on both PRFI and Hinde via the New York Secretary of State on October 26, 2015, and October 27, 2015, respectively.[33]

---

[29] PIIC claim notes, Gershweir Decl. Ex. C, at pp. 32-33; Cruz dep. tr., Gershweir Decl. Ex. B, at pp. 55-56.
[30] PIIC claim notes, Gershweir Decl. Ex. C, at p. 32; Cruz dep. tr., Gershweir Decl. Ex. B, at pp. 57-60; May 20, 2015 email printout, with attachments, Gershweir Decl. Ex. G.
[31] Cruz dep. tr., Gershweir Decl. Ex. B, at pp. 57-60; May 20, 2015 email printout, with attachments, Gershweir Decl. Ex. G.
[32] PIIC claim notes, Gershweir Decl. Ex. C, at p. 31; Cruz dep. tr., Gershweir Decl. Ex. B, at pp. 62-65.
[33] Cruz dep. tr., Gershweir Decl. Ex. B, at pp. 65-66; January 13, 2016 email printout, with attachments, Gershweir Decl. Ex. H.

PIIC retained counsel to defend only PRFI in the Underlying Action, and from the beginning of that litigation.[34]

In the Underlying Action complaint, Ramos seeks damages against Hinde and PRFI for injuries he allegedly sustained on December 24, 2014, when he tripped and fell over a defective metal cellar door on the sidewalk abutting the Building due to Hinde and PRFI's negligent failure to properly maintain and repair the door.[35]

In his bill of particulars, Ramos alleges he sustained a fractured nose requiring two surgeries as a result of the accident. Bill of parts., Gershweir Decl. Ex. J.

At his deposition in the Underlying Action, Ramos confirmed that the injuries for which he sought recovery in the action arose from a trip and fall over the sidewalk cellar doors on the sidewalk abutting the Building, causing him to fall on his face, resulting in a broken nose and facial disfigurement.[36]

There was no work being performed to the sidewalk cellar doors on or about December 24, 2014, when Ramos's alleged accident occurred.[37]

By Order dated June 19, 2017, the court in the Underlying Action granted Ramos's motion for a default judgment against Hinde based on its failure to appear in the action.[38]

Technology, through AmTrust, was first notified on September 12, 2018, of the Underlying Action and the occurrence on which it is based, when it was forwarded a letter from Ramos's counsel to Hinde dated September 12, 2018, attaching the order granting Ramos's motion for a default judgment against Hinde.[39]

---

[34] PIIC claim notes, Gershweir Decl. Ex. C, at p. 31; Cruz dep. tr., Gershweir Decl. Ex. B, at p. 74.
[35] Underlying Action complaint, Gershweir Decl. Ex. I.
[36] Ramos dep. tr. (Nov. 16, 2017), Gershweir Decl. Ex. K, at pp. 46-47, 52-53, 69-70, 80, 86.
[37] Adler Decl. ¶ 6.
[38] Order dated June 19, 2017, Gershweir Decl. Ex. L.
[39] Aptman Decl. ¶ 10; first-notice documents, *id.* at Ex. 4.

By email on September 21, 2018, the AmTrust claims examiner assigned to handle the Ramos matter, Glenn Denzler, tendered Hinde's defense and indemnification to PIIC as an additional insured under the PIIC Policy and based on the Lease's maintenance and indemnification provisions.[40]

By letter dated September 26, 2018, to Hinde, with a copy to PRFI's defense counsel in the Underlying Action, AmTrust advised that Hinde would be afforded a defense in the Underlying Action under the Tower Policy, subject to a reservation of rights based on Hinde's breach of the policy's notice conditions.[41]

By letter to Denzler dated October 4, 2018, signed by Cruz, PIIC denied Hinde's tender, stating in part:

> PIIC must alert you to the fact that this Action presently lists Hinde Development LLC in default with a judgment entered on against Hinde Development, you have prejudiced any defense in this matter.

> Review of the lease that you provided addresses sidewalks, the lease indicates that Puerto Rican Family Foundation must keep the sidewalk free of snow and debris with no mention of cellar doors and it is not part of our insured's lease agreement, thus there is no trigger of any additional insured or contractual indemnification coverage. Even if there were, again your late notice and tender of this matter has prejudiced the defense of this matter per policy terms conditions and exclusions.

> Please note that late notice applies and PIIC has been prejudiced, we therefore deny your tender.[42]

Cruz admitted that even if Hinde had provided timely notice, PIIC would not have defended it based on her belief that Hinde would not have qualified for additional-insured coverage under the PIIC Policy anyway based on her understanding that Hinde was

---

[40] Aptman Decl. ¶ 11; Sept. 21, 2018 email, *id.* at Ex. 5.
[41] Aptman Decl. ¶ 12; Sept. 26, 2018 ltr., *id.* at Ex. 6.
[42] Aptman Decl. ¶ 13; Oct. 4, 2018 ltr., *id.* at Ex. 7.

responsible under its lease with PRFI to maintain the sidewalk cellar doors over which Ramos allegedly tripped.[43]

By stipulation so-ordered on October 23, 2018, the court vacated the default judgment against Hinde in the Underlying Action.[44]

Technology, through AmTrust, concluded it was not prejudiced by Hinde's delayed notice because the default judgment against Hinde was vacated and there was no other indication that Hinde's defense was otherwise materially impaired by the delay, and thus it declined to pursue the late-notice defense it had reserved its right to pursue in its September 26, 2018 coverage letter to Hinde.[45]

Hinde, by its counsel retained by Technology, deposed Ramos in the Underlying Action on July 1, 2019.[46]

On July 18, 2019, Denzler reiterated Hinde's tender via email to Cruz, citing the PIIC Policy's additional-insured endorsement and challenging PIIC's late-notice position by stating that PIIC "has not been prejudiced as you claim."[47]

By email on August 7, 2019, Cruz responded to Denzler as follows:

Philadelphia Indemnity Insurance Company (PIIC) has received your request for reconsideration of tender and same is under review.

Your request for review of Additional Insured status via the policy issued to Puerto Rican Family Foundation [p]er the additional insured endorsement CG20110413 is noted.

We will continue our review of said endorsement and the lease agreement as it pertains to this matter and we will respond to your reconsideration of tender request shortly.[48]

---

[43] Cruz dep. tr., Gershweir Decl. Ex. B, at pp. 88-89, 137.
[44] So-Ordered Stipulation, Gershweir Decl. Ex. M.
[45] Aptman Decl. ¶ 17.
[46] Ramos July 1, 2019 dep. tr., Gershweir Decl. Ex. N.
[47] Aptman Decl. ¶ 14; Jul. 18, 2019 email, *id*. at Ex. 8.
[48] Aptman Decl. ¶ 15; Aug. 7, 2019 email, *id*. at Ex. 9.

By letter dated August 23, 2019, to PRFI, with a copy to AmTrust, PIIC reiterated its denial of coverage to Hinde, stating as respects the claim for additional-insured coverage as follows:

> [The PIIC Policy] provides additional insured coverage to managers or lessors of premises, but only with respect to the liability arising out of the ownership, maintenance or use of that part of the premises leased to [PRFI]. Given that this accident arises from a misleveled metal cellar door affixed in the sidewalk at 4123 Third Avenue, Bronx, NY 10453 and we have deposition testimony and maintenance records to support [Hinde's] responsibility for same, there is no additional insurance coverage available to them under this policy.[49]

PIIC's August 23, 2019 coverage letter does not raise late notice as a ground for disclaiming coverage to Hinde. *Id.*

On December 20, 2019, Hinde moved for summary judgment on its common-law and contractual indemnification claims against PRFI in the Underlying Action.[50]

By Order dated December 8, 2020, the court denied Hinde's motion.[51]

By Order dated April 27, 2021, the court granted PRFI's motion for summary judgment dismissing all claims against it in the Underlying Action, stating in part:

> Administrative Code § 7-210, combined with section 19-152, imposes a nondelegable duty upon property owners to maintain and repair the sidewalk abutting their property, and specifically imposes liability upon property owners for injuries resulting from a violation of the statute. (*See Collado v Cruz*, 81 AD3d 542 [1st Dept 2011]; *Stein v 1394 Hous. Corp.*, 31 Misc 3d 1224[A], 2011 NY Slip Op 50813[U] [Sup Ct, NY County 2011].) Section 7-210 provides in pertinent part:
>
>> "a. It shall be the duty of the owner of real property abutting any sidewalk ... to maintain such sidewalk in a reasonably safe condition.
>> "b. Notwithstanding any other provision of law, the owner of real property abutting any sidewalk ... shall be liable for any

---

[49] Aptman Decl. ¶ 16; Aug. 23, 2019 ltr., *id.* at Ex. 10.
[50] Hinde moving docs., Gershweir Decl. Ex. O.
[51] Order, Gershweir Decl. Ex. P.

injury to property or personal injury, including death, proximately caused by the failure of such owner to maintain such sidewalk in a reasonably safe condition. Failure to maintain such sidewalk in a reasonably safe condition shall include, but not be limited to, the negligent failure to install, construct, reconstruct, repave, repair or replace defective sidewalk flags and the negligent failure to remove snow, ice, dirt or other material from the sidewalk."

The Administrative Code does not impose any duty on a commercial tenant, leaving that issue to the property owner and his contract (lease) with the tenant.

The 2003 amendments to this section of the Administrative Code transferred all liability for sidewalk defects from the city to the property owner, except owners of one-to-three-family homes that are either wholly or partially owner-occupied and used exclusively for residential purposes. Defendant Hinde is not exempt from this law, nor does it claim to be.

Section 7-210 thus shifts tort liability from the city to property owners who breach the requirements imposed by section 19-152. That is, the scope of a property owner's responsibility regarding the repair and maintenance of sidewalks imposed by section 7-210 "mirrors the duties and obligations of property owners with regard to sidewalks set forth in Administrative Code section 19-152" (Rep of Comm on Transp at 4, Local Law Bill Jacket, Local Law No. 49 [2003] of City of NY). Therefore, section 7-210 must be read in conjunction with section 19-152.

With regard to the duty to repair, section 19-152(a) provides that a property owner is required to repair "a defective sidewalk flag in front of or abutting such property," which "contain[s] a substantial defect." A substantial defect is defined to include many items which are enumerated, in pertinent part: "6. hardware defects which shall mean (i) hardware or other appurtenances not flush within 1/2" of the sidewalk surface or (ii) cellar doors that deflect greater than one inch when walked on, are not skid resistant or are otherwise in a dangerous or unsafe condition" (Administrative Code § 19-152 [a]).

The obligation to repair is thus not limited to defects in the actual masonry material of the sidewalk flag, but includes the hardware or other items installed in the sidewalk appurtenant to the owner's property for the use and benefit of the property owner. Cellar doors are therefore part of the property owner's obligation under section 7-210.

Thus, PRFI, who was undisputedly the commercial tenant of the property abutting the purported accident location, could only be liable to plaintiff if it actually created the condition that caused plaintiff's injuries

(*see Collado v Cruz*, 81 AD3d 542 [2011]; *Otero v City of New York*, 213 AD2d 339, 339-340 [1st Dept 1995]; *Williams v Azeem*, 62 AD3d 988, 989 [2d Dept 2009].) There is no such claim here. . . .

Further, the lease between Hinde and PRFI does not create a duty which runs from PRFI to the plaintiff, a pedestrian (*see Collado v Cruz*, 81 AD3d 542 [2011]; *Kennedy v C & C New Main St. Corp.*, 269 AD2d 499, 500 [2d Dept 2000]; *DeCurtis v T.H. Assoc.*, 241 AD2d 536, 537 [2d Dept 1997]; *Leslie v Shanik Bros. Inc.*, 2012 NY Slip Op 31986[U] [Sup Ct, Queens County 2012].) . . . .

. . .

Thus, any failure of PRFI to repair any defect in the cellar doors, even if required under the lease, does not create a duty on their part to plaintiff. Therefore, since plaintiff failed to raise a triable issue of fact as to whether PRFI had any duty related to the cellar doors, defendant PRFI is entitled to summary judgment dismissing the complaint insofar as asserted against it by the plaintiff.

Moreover, as to any common-law indemnification claim, under New York law, "one who is liable for an injury vicariously or by imputation of law may seek common-law indemnification from a person primarily liable for the injury" (*Bd. Of Managers of Bay Club Condominium v Bay Club of Long beach, Inc.*, 15 Misc 3d 282, 288 [Sup Ct, Nassau County, 2007]; *see also* 23 NY Jur.2d Contribution, Indemnity and Subrogation section 90). "One whose liability is premised upon active negligence cannot obtain common law or implied indemnity" (*Bd. Of Managers of Bay Club Condominium,* 15 Misc 3d at 289, *citing D'Ambrosio v City of New York,* 55 NY2d 454, 461 [1982]). Because Hinde would be actively negligent for failing to maintain the sidewalk in accordance with the Administrative Code, it would not be entitled to common-law indemnification and its cross claim for common-law indemnification against PRFI is also dismissed.[52]

By email on October 13, 2021, Technology's counsel advised PIIC's counsel as

follows:

Be advised that my client, Technology, has reached a settlement-in-principle on behalf of Hinde Development, LLC, with plaintiff Edwin Ramos to resolve the underlying action relating to the above-referenced coverage litigation in the amount of $88,000, which it intends to finalize on Friday, 10/15. As you know, it is Technology's position that your client, PIIC, is required to defend and indemnify Hinde on a sole, primary basis, and thus that any settlement paid by Technology due to PIIC's refusal to do so will be subject to full recovery by Technology against PIIC in the pending coverage

---

[52] Order, Gershweir Decl. Ex. Q, at pp. 3-7.

action. Should PIIC object to the amount of the settlement, please so advise me and the grounds for any such objection by Friday morning. In addition, if PIIC objects to the amount, Technology invites PIIC to participate in further settlement discussions with Ramos's counsel.[53]

By email on October 14, 2021, PIIC's counsel advised Technology's counsel as follows:

> In reply to your October 13, 2021 email, Philadelphia Indemnity Insurance Company disclaimed coverage for the Edwin Ramos matter and takes no position with respect to the settlement described in your email. We refer you to the declaratory judgment action pleadings.[54]

AmTrust, on behalf of Technology, through the account bearing its name and funded by Technology, paid $88,000 to settle Ramos's claims against Hinde, and paid $33,278.70 in expenses to defend Hinde in the Underlying Action.[55]

---

[53] Gershweir Decl. Ex. R.
[54] Gershweir Decl. Ex. S.
[55] Aptman Decl. ¶ 18; payment docs., *id*. at Ex. 11.

**Argument**

**I.    PIIC's late-notice defense is meritless on multiple grounds.**

Among PIIC's defenses is that Hinde breached the PIIC's notice conditions, which require prompt notice of any occurrence, claim or suit that may be covered under the policy. Admittedly, Hinde, through AmTrust, did not notify PIIC of the claim or suit until September 21, 2018, over three years after a claim letter was evidently mailed to Hinde relating to the Ramos incident and almost three years after Hinde was served with the Underlying Action summons and complaint via the New York Secretary of State. Nonetheless, as explained below, PIIC's late-notice defense fails for two distinct reasons: (1) PIIC waived the defense by omitting it from its second disclaimer letter, after the sole stated ground for citing it in the first letter—prejudice relating to the default judgment against Hinde—had evaporated when the default judgment was vacated; and (2) PIIC was not prejudiced by the delay, as is statutorily required, because, among other things, PIIC admitted that it would not have defended Hinde even if Hinde had promptly tendered, PIIC received prompt notice of the occurrence, claim and suit from PRFI, and the default judgment against Hinde was vacated.

***A.    PIIC waived its late-notice defense by failing to include it in its second disclaimer letter.***

Under New York law, when a liability insurer disclaims coverage for any reason, its failure to include in that disclaimer a coverage defense based on the insured's breach of a policy condition, at a time it had reason to know a breach had occurred, necessarily waives that defense. *See State of N.Y. v. AMRO Realty Corp.*, 936 F.2d 1420, 1429-1433 (2d Cir. 1991).

Though PIIC cited late notice of suit as a ground for disclaiming coverage in its initial response to Hinde's tender, under the circumstances here, its failure to cite that defense in its response to Hinde's second tender amounts to a waiver of that defense.

In its two letters responding to Technology's successive tenders of Hinde's coverage to it, PIIC set forth its reasons for denying coverage. When PIIC issued its first letter, on October 4, 2018, a default judgment had been entered against Hinde.[56] Relying exclusively on that fact, PIIC cited late notice as one ground for denying coverage, claiming it was prejudiced by the delay, as is statutorily required to support a late-notice denial. *See* N.Y. Ins. Law § 3420(a)(5). Additionally, PIIC claimed Hinde was not entitled to coverage anyway because the lease did not require PRFI to maintain the cellar doors or state that the cellar doors were part of the leased premises.[57]

To begin with, the October 4, 2018 letter cites only late notice of suit, not late notice of occurrence or claim, which are distinct bases for denying coverage. *See Olin Corp. v. Ins. Co. of N. Am.*, 966 F.2d 718, 722 (2d Cir. 1992); *Kraemer Bldg. Corp. v. Scottsdale Ins. Co.*, 136 A.D.3d 1205, 1206-07 (3d Dep't 2016). That is, by claiming that Hinde's delay only "prejudiced the defense of this matter"—and due only to the default judgment— not its investigation, PIIC's late-notice disclaimer was based only on late notice of suit. *See Hester v. Navigators Ins. Co.*, 917 F. Supp. 2d 290, 299 (S.D.N.Y. 2013) ("Provision of notice of a claim triggers the insurance company's obligation to *investigate* the claim, not to *defend* or reimburse funds for any and all actions the insured takes in response to the claim."). By thus citing only late notice of suit, PIIC waived any defense based on late notice of occurrence or claim. *See Ambrosio v. Newburgh Enlarged City Sch. Dist.*, 5

---

[56] Order dated June 19, 2017, Gershweir Decl. Ex. L.
[57] Oct. 4, 2018 ltr., Aptman Decl. Ex. 7.

A.D.3d 410, 412-13 (2d Dep't 2004); *see also Benjamin Shapiro Realty Co. v. Agricultural Ins. Co.*, 287 A.D.2d 389, 389 (1st Dep't 2001) (citing rule that "notice of disclaimer must provide a claimant with a very specific ground upon which the disclaimer is predicated," court found insurer waived late-notice defense stated in its answer to the complaint because prior disclaimer letter had asserted "a different lack of notice argument").

Three weeks later, the court vacated the default judgment against Hinde in the Underlying Action, thus eliminating the sole stated basis for PIIC's late-notice prejudice claim.[58]

Nine months later, on July 18, 2019, Denzler reiterated Hinde's tender via email to Cruz, challenging PIIC's late-notice position by stating that PIIC "has not been prejudiced as you claim."[59] By August 7, 2019 email, Cruz responded by acknowledging Denzler's "request for reconsideration of tender" and advising that "same is under review."[60] PIIC thus advised it would be reconsidering the position stated in its October 4, 2018 letter.

By letter dated August 23, 2019, to PRFI, with a copy to AmTrust, PIIC reiterated its denial of coverage to Hinde, but this time by citing only Hinde's purported lack of additional-insured coverage, not late notice.[61]

Per the above-cited facts and case law, the only proper conclusion to draw is that PIIC waived its late-notice defense by failing to cite it in its second letter, after PIIC's sole stated basis for the required prejudice element of that defense in its first letter—the default judgment against Hinde—was no longer an issue.

---

[58] So-Ordered Stipulation, Gershweir Decl. Ex. M.
[59] Aptman Decl. ¶ 14; Jul. 18, 2019 email, *id.* at Ex. 8.
[60] Aptman Decl. ¶ 15; Aug. 7, 2019 email, *id.* at Ex. 9.
[61] Aptman Decl. ¶ 16; Aug. 23, 2019 email, *id.* at Ex. 10.

Thus, regardless of the merit of its late-notice defense, PIIC cannot defeat Technology's claims herein based on that defense due to waiver.

**B.    *PIIC was not prejudiced by Hinde's notice delay.***

Even assuming PIIC did not waive its late-notice defense against Hinde, any such defense is meritless in any event due to the lack of required material prejudice stemming from Hinde's notice delay, for the multiple reasons discussed below.

The relevant Insurance Law provisions governing late notice are as follows:

> [F]ailure to give any notice required to be given by such policy within the time prescribed therein shall not invalidate any claim by the insured, injured person or any other claimant, unless the failure to provide timely notice has prejudiced the insurer.

§ 3420(a)(5).

> In any action in which an insurer alleges that it was prejudiced as a result of a failure to provide timely notice, the burden of proof shall be on: (i) the insurer to prove that it has been prejudiced, if the notice was provided within two years of the time required under the policy; or (ii) the insured, injured person or other claimant to prove that the insured has not been prejudiced, if the notice was provided more than two years after the time required under the policy.

> Notwithstanding subparagraph (a) of this paragraph, an irrebuttable presumption of prejudice shall apply if, prior to notice, the insured's liability has been determined by a court of competent jurisdiction.

> The insurer's rights shall not be deemed prejudiced unless the failure to timely provide notice *materially impairs the ability of the insurer to investigate or defend the claim.*

§ 3420(c)(2)(A)-(C) (emphasis added).

Though Technology does not dispute that Hinde's notice delay exceeded two years, thereby shifting the burden to Hinde, and thus Technology, to establish that PIIC was not prejudiced by the delay, the evidence overwhelmingly suffices to satisfy that burden.

First, any prejudice finding is precluded by the fact that, per Cruz's sworn admission, PIIC would not have defended Hinde even if it had promptly notified PIIC of

the matter, based on PIIC's position that Hinde was not entitled to additional-insured coverage in the first instance.[62] That is, PIIC's ability to defend Hinde cannot have been materially impaired if it would not have afforded any such defense anyway.

Though there does not appear to be New York case law addressing the issue, other jurisdictions with a notice-prejudice rule that have addressed the issue have routinely so found. *See, e.g., Nat'l Am. Ins. Co. of Cal. v. Certain Underwriters at Lloyd's London*, 93 F.3d 529, 538 (9th Cir. 1996) (Cal. law); *Safeguard Scientifics, Inc. v. Liberty Mut. Ins. Co.*, 766 F. Supp. 324, 332 (E.D. Pa. 1991), *aff'd in part, rev'd in part without op.*, 961 F.2d 209 (3d Cir. 1992); *Century Indem. Co. v. Aero-Motive Co.*, 336 F.Supp.2d 739, 757 (W.D. Mich. 2004), *aff'd*, 155 Fed. Appx. 833 (6th Cir. 2005); *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 763 (Cal. Ct. App. 1993); *Sherwood Brands, Inc. v. Hartford Acc. and Indem. Co.*, 347 Md. 32, 42-43 (Md. 1997); *Newman v. Scottsdale Ins. Co.*, 370 Mont. 133, 152 (Mont. 2013); *Downwyn Farms v. Ohio Ins. Guar. Assn.*, Nos. 90CA004870, 90CA004872, 1991 WL 60688, *4 (Ohio Ct. App. 9th Dist. Lorain County Apr. 17, 1991); *Halsey v. Fireman's Fund Ins. Co.*, 68 Or. App. 349, 353 (Ct. App Or. 1984); *Strickler v. Huffine*, 421 Pa. Super. 463, 471 (Pa. Super. Ct. 1992); *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*, 261 Wis. 2d 4, 39-40 (Wis. 2003); *see also* Windt, 1 Insurance Claims and Disputes § 1:4 (6th Ed.) (stating this is the proper rule and citing cases (n. 33)).

As the *Shell Oil* court explained:

> In order to demonstrate actual, substantial prejudice from lack of timely notice, an insurer must show it lost something that would have changed the handling of the underlying claim. If the insurer asserts that the underlying

---

[62] Cruz dep. tr., Gershweir Decl. Ex. B, at pp. 88-89, 137.

claim is not a covered occurrence or is excluded from basic coverage, then earlier notice would only result in earlier denial of coverage.

12 Cal. App. 4th at 763.

In any event, PIIC was not prejudiced by Hinde's delayed notice of occurrence or claim because PRFI timely notified it of same, thus enabling PIIC to timely investigate the matter. Indeed, PIIC's investigation even involved communicating directly with Hinde's agent, who cooperated by providing PIIC with the requested information regarding the repair of the sidewalk cellar doors, including a repair bill and "before and after" photographs.[63]

Moreover, PIIC was not deprived, materially or otherwise, of the ability to defend Hinde because Ramos's counsel advised PIIC of the Underlying Action and forwarded a copy of the summons and complaint before any litigation had taken place.[64] At that time, PIIC was aware that Hinde was PRFI's landlord and thus that it qualified as an additional insured under the PIIC Policy— "an entity enjoying the same protection as the named insured," PRFI.[65] *Pecker Iron Works of N.Y., Inc. v. Traveler's Ins. Co.*, 99 N.Y.2d 391, 393 (2003). Although Hinde was entitled to the same protection as PRFI and the PIIC Policy states that "notice given by or on behalf of the injured person . . . shall be considered notice to us,"[66] in response to Ramos's prompt notice of suit, PIIC opted to defend only PRFI, not Hinde. Since PIIC thus had the same *ability* to defend Hinde as it did PRFI

---

[63] PIIC claim notes, Gershweir Decl. Ex. C, at pp. 32-33; Cruz dep. tr., Gershweir Decl. Ex. B, at pp. 48-50, 55-60; April 22, 2015, and May 4, 2015, email exchange printout, Gershweir Decl. Ex. F; May 20, 2015 email printout, with attachments, Gershweir Decl. Ex. G.

[64] PIIC claim notes, Gershweir Decl. Ex. C, at p. 31; Cruz dep. tr., Gershweir Decl. Ex. B, at pp. 62-66; January 16, 2016 email printout, with attachments, Gershweir Decl. Ex. H.

[65] PIIC claim notes, Gershweir Decl. Ex. C, at p. 34.

[66] PIIC Policy, Gershweir Decl. Ex. A., at Commercial General Liability Coverage Form, § IV, ¶ 4, p. 11 (D00262-263), as modified by New York Changes — Commercial General Liability Coverage Form, ¶ C., p. 2 (D00288).

from the outset, the mere fact it chose not to do so cannot give rise to a viable claim that Hinde's own delay materially deprived PIIC of the ability to defend it, as required to establish prejudice.

Furthermore, as discussed supra, the only source of prejudice that PIIC cited in its initial disclaimer letter—the default judgment against Hinde—cannot sustain a prejudice finding because that judgment was vacated, which enabled Technology to fully defend Hinde—including deposing Ramos and moving for summary judgment[67]—just as PIIC could have done had it simply decided to do so. *See Castillo v. Prince Plaza, LLC*, 142 A.D.3d 1127, 1129 (2d Dep't 2016) (finding that insurer could not rely on vacated default judgment to establish prejudice). Indeed, given PIIC's ability to collect all the information necessary to properly defend both PRFI and Hinde through its prompt pre-suit investigation and communications with both its insureds, and its involvement in the Underlying Action from the outset through its defense of PRFI, PIIC was better positioned to defend Hinde than was Technology, which declined to disclaim coverage to Hinde based on late notice because the default judgment was vacated and there were no other indicia of material prejudice resulting from the delay.[68]

Finally, lest PIIC argue otherwise, Technology does not claim that PRFI's notice to PIIC may be imputed to Hinde or, stated otherwise, that Hinde did not have an independent duty to notify PIIC. But Hinde's failure to promptly provide its own notice only answers the question of whether it breached the policy's notice conditions, not whether any such breach prejudiced PIIC. As respects the latter question, the Court must indeed consider PRFI's timely notice in determining whether Hinde's delay prejudiced

---

[67] Ramos July 1, 2019 dep. tr., Gershweir Decl. Ex. N; Hinde moving docs., Gershweir Decl. Ex. O.
[68] Aptman Decl. ¶ 17.

PIIC. *See City of New York v. Cont'l Cas. Co.*, 27 A.D.3d 28, 32-33 (1st Dep't 2005) (citing prejudice standard, court rejected insurer's late-notice-of-suit defense against additional insured because named insured promptly notified insurer of occurrence and insurer "was actively participating in the litigation" by defending named insured before additional insured gave notice of suit); *cf. Bridge St. Contracting Inc. v. Everest Nat. Ins. Co.*, 132 A.D.3d 500, 501 (1st Dep't 2015) (finding insurer's late-notice disclaimer to additional insured proper because, when notice was given, the insurer "was not participating in the defense of any party to the underlying action" and "first learned of the claims more than a year after they were asserted" (citing *City of New York*, *supra*, as contrasting comparison)).

For all these reasons, PIIC's late-notice defense fails as a matter of law.

## II. New York case law establishes that the standard additional-insured endorsement at issue here covers the lessor for all accidents occurring on public sidewalks abutting the premises leased to the named insured.

To recap, the PIIC Policy's additional-insured lessor provision covers the additional insured for "liability arising out of the ownership, maintenance or use that part of the premises leased or rented to you [PRFI]."[69] As discussed below, New York case law addressing this industry-standard provision establishes that coverage thereunder extends to all accidents occurring on the public sidewalk abutting the premises leased to the named insured, no matter the circumstances.

To begin with, the provision does not state that the incident giving rise to liability must occur within the leased premises or result from the tenant's negligence. Indeed, to the contrary, by using the phrase "arising out of," the provision must be broadly

---

[69] PIIC Policy, Gershwir Decl. Ex. A, at General Liability Deluxe Endorsement: Human Services, ¶ K.2.f., p. 7 (D00313).

interpreted not to imply any such narrow reading. *See Burlington Ins. Co. v. NYCTA*, 29 N.Y.3d 313, 326 (2017) ("additional insured endorsements [using the phrase] respond to injury or damage arising from the additional insured's sole negligence"); *Regal Constr. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 15 N.Y.3d 34, 38 (2010) ("the phrase 'arising out of' in an additional insured clause . . . mean(s) originating from, incident to, or having connection with" (internal quotation marks and citation omitted)); *Mt. Vernon Fire Ins. Co. v. Creative Hous. Ltd.*, 88 N.Y.2d 347, 353 (1996) (finding the phrase requires a "but-for" test to determine coverage).

Nor does the provision refer to either the lessor's or the named-insured tenant's "ownership, maintenance or use" of the leased premises, thus further confirming that it does not matter out of which party's acts or omissions the subject accident arose. Indeed, by including the term "ownership," a term that cannot apply to the lessee, the provision necessarily applies to damages caused by the owner/lessor's own acts or omissions.

Consistent with the provision's use of this broad language, the New York state appellate courts have routinely interpreted it to cover the lessor for accidents occurring on public sidewalks abutting the premises leased to the named insured, even if the lessor, whether under the lease or by statute, was required to maintain or repair the area. *See*, *e.g.*, *Isidore Margel Trust Mitzi Trustee v. Mt. Hawley Ins. Co.*, 195 A.D.3d 799 (2d Dep't 2021); *Wesco Ins. Co. v. Travelers Prop. Cas. Co. of Am.*, 188 A.D.3d 476 (1st Dep't 2020); *Tower Ins. Co. of N.Y. v. Leading Ins. Group Ins. Co. Ltd.*, 134 A.D.3d 510 (1st Dep't 2015); *Frank v. Cont'l Cas. Co.*, 123 A.D.3d 878 (2d Dep't 2014); *L&B Estates, LLC v. Allstate Ins.*, 71 A.D.3d 834 (2d Dep't 2010); *ZKZ Assocs. v. CNA Ins. Co.*, 224 A.D.2d 174 (1st Dep't 1996), *aff'd*, 89 N.Y.2d 990 (1997); *Donato Realty, LLC v. Utica First Ins. Co.*, No. 152419/12, 2016 WL 3902273 (Sup. Ct. N.Y. County Jul. 15, 2016), *aff'd*, 146 A.D.3d

481 (1st Dep't 2017); *76-01 37th Ave. Realty Corp. v. Dongbu Ins. Co., Ltd.*, No.
161256/13, 2015 WL 5643614, *3-4 (Sup. Ct. N.Y. County Sep. 25, 2015), *rev'd*, 146 A.D.3d
448 (1st Dep't 2017) (reversing only to the extent the lower court found it premature to
declare that the defendant insurer had to indemnify the lessor).

Thus, for example, in *ZKZ*, in finding the lessor, ZKZ, was entitled to a defense as
an additional insured for an abutting-sidewalk accident under its tenant Guardian's
policy, the Appellate Division stated:

> We note that *it is not relevant that the management contract between ZKZ
> and Guardian may have assigned maintenance of the sidewalks to ZKZ.* At
> issue is the extent of the insurance coverage provided by the subject policy,
> and it is clear that the language of that policy extended to ZKZ protection
> for liability arising out of the use of the premises, which were defined not
> on the basis of who was obligated to maintain them but rather by the
> consequences stemming from their use as a garage.

224 A.D.2d at 176 (emphasis added); *accord*, *Wesco*, 188 A.D.3d at 477 ("Coverage is
determined by the terms of the policy, and is not affected by the finding in the underlying
action that [the lessor] may have failed to satisfy any legal obligations to maintain the
sidewalk).

Rather than evaluating which party is responsible for maintaining the sidewalk or
whether the sidewalk is part of the leased premises—which it cannot be, at least in New
York City, where the City owns the sidewalks—the courts have generally found two
independent bases for finding coverage for such claims: (1) directly abutting sidewalks
are "necessarily used for access in and out of" the leased space, thus implicating the
provision's "maintenance" or "use" coverage triggers, *ZKZ*, 89 N.Y.2d at 991; *Isidore
Margel*, 195 A.D.3d at 818; *Frank*, 123 A.D.3d at 881; and (2) with regard to New York
City public-sidewalk accidents like this one, "[i]nasmuch as Administrative Code of the
City of New York § 7-210 imposes liability on owners of commercial property for defective

conditions on sidewalks, the [lessor's] potential liability arises from its ownership of the leased premises," thus implicating the provision's "ownership" coverage trigger, *Isidore Margel*, 195 A.D.3d at 818; *Frank*, 123 A.D.3d at 880-81; *L&B*, 71 A.D.3d at 836-37; *see Tower*, 134 A.D.3d at 510 (approvingly citing *Frank* and *L&B*).

The courts have also found that lease provisions requiring the tenant to procure liability insurance covering injury sustained in areas adjacent to the leased premises further support a conclusion that the subject provision protects the lessor against abutting-sidewalk claims. *See Donato*, 146 A.D.3d at 482; *Tower*, 134 A.D.3d at 510.

Consistent with the above, the courts have also found coverage without regard to whether the injured plaintiff was actually using the sidewalk to enter or exit the leased premises. *See*, *e.g.*, *Tower* (appellant's brief confirms injured plaintiff was not entering or exiting, 2015 WL 11070613, at *7); *Donato Realty*, 2016 WL 3902273, *2; *76-01 37th Ave. Realty Corp.*, 2015 WL 5643614, *1.

In short, therefore, the New York courts have found that, *no matter the circumstances*, this additional-insured provision covers the lessor as respects liability for injury sustained on a public sidewalk abutting the premises leased to the target insurer's named insured.

Finally, lest PIIC argue otherwise, the fact that an accident was caused by a trip and fall over cellar doors embedded in the sidewalk rather than over a defective sidewalk flagstone does not impact this analysis. As set forth above, a consistent ground for the courts' finding that the provision covers lessors for abutting-sidewalk accidents in New York City is the applicability of Administrative Code of the City of New York § 7-210, which imposes liability for such accidents based on ownership of the abutting property, thereby implicating the provision's "ownership" coverage trigger. As the court in the Underlying

Action found[70]—and case law otherwise confirms, *see Vucetovic v. Epsom Downs, Inc.*, 10 N.Y.3d 517, 521 (2008)—§ 7-210's scope as respects the sidewalk features to which it applies may properly be determined based on § 19-152, which identifies sidewalk "hardware defects," including "cellar doors that deflect greater than one inch when walked on . . . or are otherwise in a dangerous or unsafe condition," as conditions for which the abutting owner is responsible.

### III. Since the Underlying Action complaint alleges Ramos was injured due to a hazardous condition on the sidewalk abutting the leased premises, PIIC had a duty to defend Hinde.

A liability insurer's "duty to defend arises whenever the allegations in a complaint against the insured fall within the scope of risks undertaken by the policy, regardless of how false or groundless those allegations might be." *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984). This same broad duty-to-defend standard applies to additional insureds. *BP Air Conditioning Corp. v. One Beacon Ins. Group*, 8 N.Y.3d 708, 711 (2007).

Ramos alleged in the Underlying Action complaint that he was injured due to a hazardous condition on the sidewalk abutting the premises leased to PRFI (and due to PRFI's own negligence).[71] Given the binding authority discussed *supra* regarding the additional-insured provision's scope, these allegations fall within the scope of coverage provided Hinde and thus triggered PIIC's duty to defend it. Technology is thus entitled to a declaratory judgment to that effect and recovery of the cost to defend Hinde.

---

[70] April 27, 2021 Order, Gershwier Decl. Ex. Q, at pp. 3-7.
[71] Underlying Action complaint, Gershwier Decl. Ex. I.

IV. **Since Ramos's claim was based exclusively on his allegation that he was injured due to a hazardous condition on the public sidewalk abutting the leased premises, PIIC also had a duty to indemnify Hinde.**

Unlike the duty to defend, which, as discussed supra, "is measured against the allegations of pleadings," an insurer's duty to indemnify "is determined by the actual basis for the insured's liability." *Servidone Const. Corp. v. Security Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985). This difference derives from the fact that a duty to defend may be triggered even where uncovered claims are asserted against the insured, whereas an insurer need only indemnify the insured against covered claims. *See BP Air Conditioning Corp. v. One Beacon Ins. Group*, 8 N.Y.3d 708, 714 (2007).

But if no uncovered claims are pleaded, there is no practical basis for distinguishing between the duty to defend and the duty to indemnify. Thus, as the courts have confirmed, a determination regarding an insurer's duty to indemnify before the insured's underlying liability has been determined is premature only "where the complaint in the underlying action alleges several grounds of liability, *some of which* invoke the coverage of the policy, and where the issues of indemnification and coverage hinge on facts which will necessarily be decided in that underlying action." *Hout v. Coffman*, 126 A.D.2d 973, 973 (4th Dep't 1987) (emphasis added); *see Prashker v. U.S. Guar. Co.*, 1 N.Y.2d 584, 590 (1956) (after concluding that some of the claims against insured in underlying complaint were covered and some not, Court found it could not rule on duty to indemnify until those claims were resolved in underlying action).

Thus, in cases where coverage does not pivot on which theory of liability against the insured prevails, the courts have found a duty to indemnify without a determination of liability in the underlying action. *See, e.g., Regal Constr. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 15 N.Y.3d 34 (2010); *Wesco Ins. Co. v. Travelers Prop. Cas. Co. of*

*Am.*, 188 A.D.3d 476 (1st Dep't 2020); *76-01 37th Ave. Realty Corp. v. Dongbu Ins. Co., Ltd.*, 146 A.D.3d 448 (1st Dep't 2017); *Maldonado v. Kissm 518 Ninth Corp.*, 18 A.D.3d 627 (2d Dep't 2005); *N.Y. Conv. Ctr. Oper. Corp. v. Morris Cerrullo World Evangelism, Inc.*, 269 A.D.2d 275 (1st Dep't 2000); *see generally Wausau Underwriters Ins. Co. v. Old Republic Gen. Ins. Co.*, 122 F.Supp.3d 44, 52-53 (S.D.N.Y. 2015) (discussing cases where the court found a duty to indemnify an additional insured before its liability in the underlying action was determined).

Here, Ramos's claim against Hinde is based exclusively on his claim that his injuries were caused by a hazardous condition on the sidewalk abutting the leased premises.[72] As shown *supra*, that claim, if proven true, would be covered under the PIIC Policy, regardless of any other circumstances. Since Ramos did not plead an alternate theory of liability against Hinde, let alone one not covered under the PIIC Policy, PIIC's duty to indemnify Hinde is established.

Moreover, in any event, the Underlying Action court confirmed that Hinde's liability, if any, would be imposed under Administrative Code of the City of New York § 7-210, which, as discussed supra, compels a duty to indemnify under the additional-insured provision's "ownership" trigger.[73] *Isidore Margel Trust Mitzi Trustee v. Mt. Hawley Ins. Co.*, 195 A.D.3d 799 (2d Dep't 2021); *Frank v. Cont'l Cas. Co.*, 123 A.D.3d 878 (2d Dep't 2014); *L&B Estates, LLC v. Allstate Ins.*, 71 A.D.3d 834 (2d Dep't 2010).

Furthermore, as the case law cited supra also demonstrates, the Lease requirement that PRFI obtain general liability insurance covering Hinde against liability for accidents

---

[72] Underlying Action complaint, Gershweir Decl. Ex. I; Bill of parts., Gershweir Decl. Ex. J; Ramos dep. tr. (Nov. 16, 2017), Gershweir Decl. Ex. K, at pp. 46-47, 52-53.
[73] April 27, 2021 Order, Gershweir Decl. Ex. Q, at pp. 3-7.

"on or about the Premises, or any appurtenances thereto" likewise triggers coverage under the subject provision for accidents like this one occurring on the abutting sidewalk.[74] *See Donato Realty, LLC v. Utica First Ins. Co.*, 146 A.D.3d 481, 482 (1st Dep't 2017); *Tower Ins. Co. of N.Y. v. Leading Ins. Group Ins. Co. Ltd.*, 134 A.D.3d 510, 510 (1st Dep't 2015).

Further support for a conclusion that Hinde's liability would necessarily arise out of the "ownership, maintenance, or use" of the premises leased to PRFI and thus trigger PIIC's duty to indemnify includes the following undisputed facts: PRFI was the Building's sole occupant and the sole user of the basement to which the cellar doors provided access; PRFI controlled access through the cellar doors by placing its own padlock on it; the Lease grants PRFI "a license to use the entire building," and permits it to "use the basement area below the demised Premises for storage of supplies."[75]

Finally, lest PIIC argue otherwise, the mere fact that the court dismissed the claims against PRFI in the Underlying Action does not compel a different result because, as set forth supra, coverage under the subject additional-insured provision does not pivot on which party—lessor or lessee—was at fault for the offending sidewalk condition. *See Wesco Ins. Co. v. Travelers Prop. Cas. Co. of Am.*, 188 A.D.3d 476 (1st Dep't 2020) (finding tenant's insurer had duty to indemnify additional insured lessor even though all claims against tenant in the underlying action were dismissed, per appellant's brief, 2020 WL 6469550, at *9); *Donato Realty, LLC v. Utica First Ins. Co.*, No. 152419/12, 2016 WL 3902273, *2 (Sup. Ct. N.Y. County Jul. 15, 2016) ("the fact that claims against Papers & News [insurer Utica's named-insured tenant] were dismissed in the Underlying Action

---

[74] Lease, Adler Decl. Ex. 1, at ¶21.A.
[75] Adler Decl. ¶¶ 4-6; Lease, Adler Decl. Ex. 1, at ¶ 61.

does not in any way affect whether Utica has an obligation to defend and indemnify Donat[o] [the additional-insured lessor]"), *aff'd*, 146 A.D.3d 481 (1st Dep't 2017).

Accordingly, Technology is entitled to a declaratory judgment that PIIC breached its duty indemnify Hinde in the Underlying Action and recovery of the cost to settle that action on Hinde's behalf.

**V.    The PIIC Policy is primary to the Tower Policy with respect to Hinde's coverage in the Underlying Action given the policies' respective "other insurance" clauses, thus requiring PIIC to reimburse Technology in full for the costs it has incurred defending and indemnifying Hinde.**

Although, like the PIIC Policy, the Tower Policy also covered Hinde as respects the claims against it in the Underlying Action, as explained below, the PIIC Policy is primary to the Tower Policy as respects Hinde's coverage. Thus, PIIC's duty to defend and indemnify Hinde is primary and PIIC must reimburse Technology in full for the costs Technology incurred defending and indemnifying Hinde.

"Where the same risk is covered by two or more policies, each of which was sold to provide the same level of coverage (as is the case here), priority of coverage (or, alternatively, allocation of coverage) among the policies is determined by comparison of their respective 'other insurance' clauses." *Sport Rock Int'l, Inc. v. Am. Cas. Co. of Reading, PA*, 65 A.D.3d 12, 18 (1st Dep't 2009) (citations omitted).

Here, the Tower Policy states it is primary unless "other primary insurance [is] available to you [Hinde] covering liability for damages arising out of . . . the premises for which you have been added as an additional insured by attachment of an endorsement," in which case it is excess.[76] Since Hinde is entitled to coverage as an additional insured

---

[76] Tower Policy, Aptman Decl Ex. 1, at Commercial General Liability Coverage Form, § IV, ¶ 4, at p. 11.

under the PIIC Policy via an endorsement covering such liability, the Tower Policy purports to be excess.[77]

The PIIC Policy's "other insurance" clause, by contrast, states that the policy provides primary coverage absent exceptions not applicable here.[78]

Accordingly, Hinde is entitled to primary, non-contributory coverage under the PIIC Policy.

Since the PIIC Policy is thus primary to the Tower Policy as respects Hinde's coverage, PIIC must reimburse Technology in full for the reasonable amounts it spent to defend and indemnify Hinde in the Underlying Action. *See Village of Brewster v. Virginia Sur. Co., Inc.*, 70 A.D.3d 1239, 1242-43 (3d Dep't 2010); *Harleysville Ins. Co. v. Utica Ins. Co.*, 38 A.D.3d 1364, 1367 (4th Dep't 2007).

## VI.    Technology is the proper plaintiff.

PIIC also claims that Technology is not the proper plaintiff in this action. Though the precise rationale for this defense remains a mystery to Technology, it briefly addresses its standing to bring this action below.

Ordinarily, of course, the insurer identified on the insurance policy under which payments are made is the proper plaintiff in any subrogation or implied-indemnification suit such as this to recover those payments. Here, however, because of its financial situation, which ultimately led to its liquidation, Tower, the insurer, through its representatives, entered into agreements with Technology, its reinsurer as respects certain policies such as the Tower Policy, assigning its rights and duties under those

---

[77] PIIC Policy, Gershweir Decl. Ex. A, at General Liability Deluxe Endorsement: Human Services, ¶ K.2.f., p. 7 (D00313).

[78] *Id*. at Commercial General Liability Coverage Form, § IV, ¶ 4, p. 11 (D00263).

policies to Technology, thus effectively substituting Technology for Tower as the insurer.[79] *See N.J. Mfrs. Ins. Grp. v. Narrangasset Bay Ins. Co.*, No. 17-011112, 2018 WL 6427868, *1 n. 1 (D. N.J. Dec. 7, 2018) (treating Technology as such under a policy issued by an insolvent insurer containing a cut-through endorsement); *USF Ins. Co. v. Clarendon Am. Ins. Co.*, No. 05-04138, 2006 WL 8434386, at *4 n. 20 (C.D. Cal. Feb. 22, 2006) (describing reinsurer as "the effective liability carrier" based on cut-through endorsement and insolvency of issuing insurer).

Consistent with those agreements, Technology funded an account administered by AmTrust, the general managing agent under which it exclusively operated, from which all costs to defend and indemnify Hinde in the Underlying Action were paid.[80] Such use of a general managing agent is standard practice in the insurance industry. *See Am. Home Assur. Co. v. Starr Tech. Risks Agency, Inc.*, No. 600263/06, 2006 WL 304746, *1 (Sup. Ct. N.Y. Cty. Feb. 6, 2006) ("The role of a general managing agent is to market the insurers' policies, underwrite and issue policies, collect premiums, adjust and pay claims, negotiate reinsurance agreements, all on behalf of the insurance company."). As such, Technology is indeed the proper plaintiff in this action.

## VII.    Technology has established it is entitled to the monetary relief it seeks, plus interest from the dates of payment.

Technology is also entitled to recover the full amount of damages sought in this action for the amounts it spent defending and settling Hinde, plus interest.

---

[79] Commercial Lines Cut-Through Quota Share Reinsurance Agreement dated January 3, 2014, Aptman Decl. Ex. 2, at Art. 2, § 2.2(a), p. 7; Art. 4(a), pp. 13-14; CastlePoint National Insurance Company Conservation Agreement dated July 28, 2016, Aptman Decl. Ex. 3, at § 9.1.11, p. 39.
[80] Aptman Decl. ¶¶ 8; 9.

"Where an insurer unjustifiably refuses to defend a suit, the insured may make a reasonable settlement or compromise of the injured party's claim, and is then entitled to reimbursement from the insurer." *City of New York v. Zurich-Am. Ins. Grp.*, 27 A.D.3d 609, 610–11 (1st Dep't 2006) (internal quotation marks, alterations, and citations omitted). Nor may such an insurer challenge the settlement amount's reasonableness where it "is involved in the underlying proceeding yet fails to challenge the reasonableness of the settlement there," *id.* at 611, or where it had "ample opportunity to participate in the underlying litigation but opted not to," *Serio v. Pub. Serv. Mut. Ins. Co.*, 7 A.D.3d 277, 278 (1st Dep't 2004). Here, PIIC participated in the Underlying Action, through its defense of PRFI, but improperly refused to do so as respects Hinde, and was given the opportunity to object to the reasonableness of Technology's $88,000 settlement offer in that action but failed to do so.[81] Under those circumstances, PIIC is precluded from challenging the reasonableness of the settlement.

In any event, given the modest amount of the settlement, the evidence submitted of Ramos's injuries[82], and the fact that the court had denied Hinde's summary-judgment motion[83], the Court may conclude as a matter of law that the settlement was reasonable.

As respects the defense-cost portion of the damages sought, Technology has supplied ample proof of their reasonableness through its submission of defense counsel's invoices, which show the work performed and the reasonable rate charged, as well as the invoices for non-attorney expenses.[84]

---

[81] Gershweir Decl. Exs. R; S.

[82] Bill of parts., Gershweir Decl. Ex. J; Ramos dep. tr. (Nov. 16, 2017), Gershweir Decl. Ex. K, at pp. 69-70, 80, 86.

[83] Dec. 8, 2020 Order, Gershweir Decl. Ex. P.

[84] Aptman Decl. ¶ 18; payment docs., *id.* at Ex. 11.

Finally, Technology is entitled to recover 9% statutory interest on the defense and indemnity amounts from the date of payment under N.Y. CPLR § 5001. *See*, *e.g.*, *U.S. Fire Ins. Co. v. Fed. Ins. Co.*, 858 F.2d 882, 887-89 (2d Cir. 1988); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Greenwich Ins. Co.*, 103 A.D.3d 473, 474 (1st Dep't 2013).

## Conclusion

Based on the foregoing, Technology respectfully requests that this Court issue an order granting its motion; and that it grant such further relief as the Court deems just and proper.

Dated:    New York, New York
          April 22, 2022

Respectfully submitted,

KENNEDYS CMK LLP

By: _____
     Max W. Gershweir
     Attorneys for Plaintiff
     570 Lexington Ave. – 8th Floor
     New York, New York 10022
     646-625-4000