UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

TECHNOLOGY INSURANCE COMPANY, INC.,
as reinsurer and successor to Tower Insurance
Company of New York,                                          Civil Action No.: 1:21-cv-07387

                                  Plaintiff,

            -against-

PHILADELPHIA INDEMNITY INSURANCE
COMPANY,

                                  Defendant.
------------------------------------------------------------x

_____

**PLAINTIFF TECHNOLOGY INSURANCE COMPANY'S MEMORANDUM OF
LAW IN OPPOSITION TO DEFENDANT PHILADELPHIA INDEMNITY
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**
_____

                              KENNEDYS CMK LLP
                              Attorneys for Plaintiff
                              570 Lexington Avenue – 8th Floor
                              New York, New York 10022
                              212-252-0004

Of Counsel:
Max W. Gershweir

# TABLE OF CONTENTS

Page

Table of Authorities ............................................................................................... ii

Preliminary Statement ........................................................................................... 1

Statement of Facts and of the Case ....................................................................... 3

Argument ................................................................................................................. 4

I.   PIIC's contention that Hinde does not qualify as an additional insured
     under the PIIC Policy ignores well-settled New York case law holding
     that the provision covers the lessor for all accidents occurring on
     public sidewalks abutting the premises leased to the named insured ............. 4

II.  PIIC is not entitled to summary judgment based on its late-notice
     defense because its claimed right to summary judgment based on that
     defense rests in part on its false claim that it is not obligated to
     establish prejudice ...................................................................................... 9

III. PIIC is wrong that Technology may not seek reimbursement from it ............. 16

Conclusion .............................................................................................................. 19

# TABLE OF AUTHORITIES

Page(s)

Cases

*76-01 37th Ave. Realty Corp. v. Dongbu Ins. Co., Ltd.*, No. 161256/13,
2015 WL 5643614 (Sup. Ct. N.Y. County Sep. 25, 2015) ................................... 6

*Am. Home Assur. Co. v. Starr Tech. Risks Agency, Inc.*,
No. 600263/06, 2006 WL 304746 (Sup. Ct. N.Y. Cty. Feb. 6, 2006) ........................... 17

*Bovis Lend Lease LMB Inc. v. Royal Surplus Lines Insurance Co.*,
27 A.D.3d 84 (1st Dep't 2005) ..................................... 10, 12

*DeForte v. Allstate Ins. Co.*,
81 A.D.2d 465 (4th Dep't 1981) ..................................... 4

*Donato Realty, LLC v. Utica First Ins. Co.*,
No. 152419/12, 2016 WL 3902273 (Sup. Ct. N.Y. County Jul. 15, 2016) ........................ 6

*Frank v. Cont'l Cas. Co.*,
123 A.D.3d 878 (2d Dep't 2014) .................................... 5, 7

*Harco Constr., LLC v. First Mercury Ins. Co.*,
190 A.D.3d 831 (2d Dep't 2021) .................................... 14

*Ichaustegui v. 666 5th Ave. Ltd. P'Ship*,
268 A.D.2d 121 (1st Dep't 2000) .................................... 12

*Isidore Margel Trust Mitzi Trustee v. Mt. Hawley Ins. Co.*,
195 A.D.3d 799 (2d Dep't 2021) ................................... 5, 7

*Jerusalem Ave. Taxpayer, LLC v. Liberty Mut. Ins. Co.*,
137 A.D.3d 600 (1st Dep't 2016) .................................... 13

*L&B Estates, LLC v. Allstate Ins.*,
71 A.D.3d 834 (2d Dep't 2010) .................................... 5, 7

*Liberty Ins. Underwriters, Inc. v. Greenwich Ins. Co.*,
No. 16-CV-4293, 2018 WL 4100489 (E.D.N.Y. Aug. 28, 2018) ..................... 10

*Mt. Hawley Ins. Co. v. Abraham Little Neck Dev. Grp., Inc.*,
825 F. Supp. 2d 384 (E.D.N.Y. 2011) ................................... 9

*N.J. Mfrs. Ins. Grp. v. Narrangasset Bay Ins. Co.*, No.,
17-011112, 2018 WL 6427868 ................................... 16

*N.Y. Mar. & Gen. Ins. Co. v. Travelers Prop. Cas. Co. of Am.*,
485 F. Supp. 3d 398 (S.D.N.Y. 2020) ................................... 9

# TABLE OF AUTHORITIES (Cont'd.)

Page(s)

Cases

*Platek v. Town of Hamburg,*
    24 N.Y.3d 688 (2015) ............................................................................................ 5

*Seaboard Sur. Co. v. Gillette Co.,*
    64 N.Y.2d 304 (1984) ............................................................................................ 8

*Storper v. Kobe Club,*
    76 A.D.3d 426 (1st Dep't 2010) ........................................................................... 7

*Tower Ins. Co. of N.Y. v. Leading Ins. Group Ins. Co. Ltd.,*
    134 A.D.3d 510 (1st Dep't 2015) .......................................................................... 5

*USF Ins. Co. v. Clarendon Am. Ins. Co.,*
    No. 05-04138, 2006 WL 8434386 ....................................................................... 16

*Vucetovic v. Epsom Downs, Inc.,*
    10 N.Y.3d 517 (2008) ............................................................................................ 7

*Wausau Underwriters Ins. Co. v. Old Republic Gen. Ins. Co.,*
    122 F.Supp.3d 44 (S.D.N.Y. 2015) ..................................................................... 10

*Wesco Ins. Co. v. Travelers Prop. Cas. Co. of Am.,*
    188 A.D.3d 476 (1st Dep't 2020) ....................................................................... 5, 7

*ZKZ Assocs. v. CNA Ins. Co.,*
    224 A.D.2d 174 (1st Dep't 1996) ...................................................................... 5, 7

## Statutes and Regulations

34 RCNY § 2-07 .......................................................................................................... 7

Insurance Law § 3420 ........................................................................................... 9-14

New York City Administrative Code § 7-210 ............................................................ 7

## Other Authorities

Restatement (Second) of Agency § 342 (1958) ...................................................... 16

## Preliminary Statement

Plaintiff Technology Insurance Company, Inc., as reinsurer and successor to Tower Insurance Company of New York, submits this memorandum of law in opposition to defendant Philadelphia Indemnity Insurance Company's ("PIIC") motion for summary judgment dismissing the complaint.[1]

Technology filed this action to recover against PIIC the amounts it paid to defend and indemnify Hinde Development LLC, a building owner, in a personal-injury action captioned *Edwin Ramos v. Hinde Development LLC, et al.*, in the Supreme Court of the State of New York, Bronx County, under Index No. 25584/2015e ("the Underlying Action"), under a commercial general liability insurance policy that Tower Insurance Company of New York, Technology's predecessor-in-interest, issued to Hinde. Technology seeks this relief based on its claim that PIIC had the primary duty to defend and indemnify Hinde as an additional insured under an insurance policy ("the PIIC Policy") PIIC issued to Hinde's tenant, Puerto Rican Family Institute, Inc. ("PRFI").

In the Underlying Action, the plaintiff, Edwin Ramos, sought damages against Hinde and PRFI for injuries he allegedly sustained when he fell due to a defective condition on a public sidewalk abutting the premises Hinde leased to PRFI. More specifically, Ramos alleges he tripped over misleveled sidewalk cellar doors leading to the premises' basement.

PIIC seeks summary judgment on three primary grounds: (1) Hinde does not qualify as an additional insured under the PIIC Policy because the sidewalk cellar doors

---

[1] Technology has contemporaneously moved for summary judgment. To minimize the burden on the Court, in responding to PIIC's arguments in this memorandum of law, Technology attempts to minimize repeating in full the same arguments it made to support its motion, instead, where appropriate, summarizing those arguments and referring the Court to the full version stated in its moving papers.

were not part of the leased premises and were Hinde's responsibility to maintain; (2) Hinde's delay in notifying PIIC of the claim and suit breached the PIIC Policy's notice conditions and vitiated any coverage to which Hinde would otherwise have been entitled, whether or not PIIC was prejudiced by the delay; and (3) Technology lacks standing to seek recovery against PIIC because it was not Hinde's insurer and did not directly make the defense and indemnity payments it seeks to recover.

As respects (1), PIIC is wrong because, under well-settled New York law, the subject additional-insured provision, covering the lessor "with respect to liability arising out of the ownership, maintenance or use of" the premises leased to the named insured, applies to a property owner's liability for abutting-public-sidewalk accidents, regardless of any other circumstance, including whether the sidewalk or sidewalk fixture was part of the leased premises, which party was obligated to maintain the sidewalk, or whether the injured person was injured while entering or exiting the premises.

As respects (2), PIIC is wrong because, by statute, a prejudice showing is indeed required, and because, in any event, PIIC waived its right to assert its late-notice defense because it omitted the defense from its second disclaimer letter, which was issued after the sole ground for late notice cited in its initial letter—the entry of a default judgment against Hinde—had evaporated because the judgment was vacated.

As respects (3), PIIC is wrong because the contracts Technology, the policy's reinsurer, submitted with its motion establish that it effectively replaced Tower as Hinde's insurer, and because it funded the account out of which the subject defense and indemnity payments were made.

**Statement of Facts and of the Case**

Technology respectfully refers the Court to the Statement of Facts and of the Case in its memorandum of law supporting its summary judgment motion for a full recitation of the relevant facts.

## Argument

**I.     PIIC's contention that Hinde does not qualify as an additional insured under the PIIC Policy ignores well-settled New York case law holding that the provision covers the lessor for all accidents occurring on public sidewalks abutting the premises leased to the named insured.**

The PIIC Policy provision under which Technology contends that Hinde is entitled to additional-insured coverage in connection with the Underlying Action—covering "liability arising out of the ownership, maintenance or use that part of the premises leased or rented to you [PRFI]" [2]—has long been the industry-standard provision covering additional-insured lessors in general liability policies issued to commercial tenants. Consistent with that fact, the provision has been the frequent subject of published decisions in New York. Despite the abundance of New York case law addressing the provision, however, in contending that it does not cover Hinde in the Underlying Action, PIIC fails to cite a single such opinion. As shown below, that omission is unsurprising.

PIIC first argues that the provision does not cover Hinde because the condition that caused Ramos's accident—misleveled sidewalk cellar doors—is purportedly not part of the premises Hinde leased to PRFI. But PIIC ignores the critical fact that neither the policy language nor the case law construing it requires that the injury be sustained within the premises leased to the named insured. The provision merely requires that the landlord's "liability arise out of the ownership, maintenance or use of" the leased premises. That is different than requiring that the injury be sustained within those premises. As "it would have been easy to provide that there was no coverage for occurrences 'off the premises,'" PIIC's failure to do so mandates a contrary conclusion. *DeForte v. Allstate Ins. Co.*, 81 A.D.2d 465, 468 (4th Dep't 1981).

---

[2] Gershweir Decl. Ex. A, at General Liability Deluxe Endorsement: Human Services, ¶ K.2.f., p. 7 (D00313).

And indeed, the New York courts have repeatedly and consistently found that the provision does not limit coverage to injury sustained within the premises leased to the named insured, and thus applies, for example, to injury sustained on abutting public sidewalks, which, by their "public" nature, are by definition not part of any private leased premises. *See*, *e.g.*, *Isidore Margel Trust Mitzi Trustee v. Mt. Hawley Ins. Co.*, 195 A.D.3d 799 (2d Dep't 2021); *Wesco Ins. Co. v. Travelers Prop. Cas. Co. of Am.*, 188 A.D.3d 476 (1st Dep't 2020); *Tower Ins. Co. of N.Y. v. Leading Ins. Group Ins. Co. Ltd.*, 134 A.D.3d 510 (1st Dep't 2015) ("the additional insured endorsement . . . give[s] the landlords coverage for accidents occurring *outside the demised premises*, *including on abutting public sidewalks*" (emphasis added)); *Frank v. Cont'l Cas. Co.*, 123 A.D.3d 878 (2d Dep't 2014); *L&B Estates, LLC v. Allstate Ins.*, 71 A.D.3d 834 (2d Dep't 2010); *ZKZ Assocs. v. CNA Ins. Co.*, 224 A.D.2d 174 (1st Dep't 1996), *aff'd*, 89 N.Y.2d 990 (1997).

Though whether the subject sidewalk cellar doors are part of the premises leased by Hinde to PRFI is thus irrelevant, Technology briefly addresses PIIC's claim that they—or, more accurately, the space to which they lead—are not. PIIC bases this claim on the fact that the premises lease, under the heading "Vault Space," states: "No vaults, vault space or area, whether or not enclosed or covered, not within the property line of the building is leased hereunder, anything contained in or indicated in any blue print or plan, or anything contained elsewhere in this lease to the contrary notwithstanding." [3] But "vault and "basement" are not synonymous, as the lease itself, by using the term "basement" in another clause—allowing PRFI to "use the basement area below the demised Premises for storage"—confirms.[4] *See Platek v. Town of Hamburg*, 24 N.Y.3d

---

[3] Lease, Paniccia Decl. Ex. G, at § 17, p. 8.
[4] *Id.* at 61.

688, 696 (2015) ("the use of different terms in the same agreement . . . implies that they are to be afforded different meanings"). And as Hinde's property manager confirmed, the subject cellar doors lead to a basement, not a vault—and one that PRFI exclusively uses in connection with its tenancy.[5]

PIIC next claims it is relevant to coverage that Ramos was only a passer-by, not someone using the area where he fell as a means of entering or exiting the premises. Again, New York case law proves PIIC wrong. *See*, *e.g.*, *Tower* (appellant's brief confirms injured plaintiff was not entering or exiting, 2015 WL 11070613, at *7); *Donato Realty, LLC v. Utica First Ins. Co.*, No. 152419/12, 2016 WL 3902273, *2 (Sup. Ct. N.Y. County Jul. 15, 2016), *aff'd*, 146 A.D.3d 481 (1st Dep't 2017); *76-01 37th Ave. Realty Corp. v. Dongbu Ins. Co., Ltd.*, No. 161256/13, 2015 WL 5643614, *1 (Sup. Ct. N.Y. County Sep. 25, 2015), *rev'd*, 146 A.D.3d 448 (1st Dep't 2017) (reversing only to the extent lower court found it premature to declare that defendant insurer had to indemnify the lessor).

PIIC next claims it is relevant to coverage that Hinde, not PRFI, was legally obligated to maintain and repair the sidewalk cellar doors. Again, New York case law proves PIIC wrong. For example, in *ZKZ*, in finding the lessor, ZKZ, was entitled to a defense as an additional insured for an abutting-sidewalk accident under its tenant Guardian's policy, the Appellate Division stated:

> We note that *it is not relevant that the management contract between ZKZ and Guardian may have assigned maintenance of the sidewalks to ZKZ*. At issue is the extent of the insurance coverage provided by the subject policy, and it is clear that the language of that policy extended to ZKZ protection for liability arising out of the use of the premises, which were defined not on the basis of who was obligated to maintain them but rather by the consequences stemming from their use as a garage.

---

[5] Adler Decl. (Docket No. 48), at ¶¶ 4-5.

6

224 A.D.2d at 176 (emphasis added); *accord, Wesco*, 188 A.D.3d at 477 ("Coverage is determined by the terms of the policy, and is not affected by the finding in the underlying action that [the lessor] may have failed to satisfy any legal obligations to maintain the sidewalk").

Although the issue is thus an irrelevant one, PIIC's reliance on 34 RCNY § 2-07(b)(1) for the proposition that Hinde was responsible for the sidewalk cellar doors is misplaced. Rather, that section applies to the owners of "underground street access covers, transformer vault covers and grating," i.e., hardware owned by public authorities, not sidewalk cellar doors owned by private property owners. 34 RCNY § 2-07(a)(1). Instead, it is New York City Administrative Code § 7-210 that governs the responsibility and liability of private building owners for hazardous conditions on abutting public sidewalks—including hardware such as sidewalk cellar doors, *see Vucetovic v. Epsom Downs, Inc.*, 10 N.Y.3d 517, 521 (2008), and order granting PRFI summary judgment in the Underlying Action[6]—that fall outside the scope of 34 RCNY § 2-07. *See Storper v. Kobe Club*, 76 A.D.3d 426, 427 (1st Dep't 2010).

That Hinde's liability is thus governed by § 7-210 is significant because the New York courts have repeatedly found that liability under that section necessarily triggers coverage under the subject provision. *See, e.g., Isidore Margel Trust Mitzi Trustee v. Mt. Hawley Ins. Co.*, 195 A.D.3d 799 (2d Dep't 2021); *Frank v. Cont'l Cas. Co.*, 123 A.D.3d 878 (2d Dep't 2014); *L&B Estates, LLC v. Allstate Ins.*, 71 A.D.3d 834 (2d Dep't 2010).

Finally, in any event, nowhere does PIIC deny that the Underlying Action complaint, by simply alleging that Ramos was injured on the sidewalk abutting the

---

[6] April 27, 2021 Order, Gershweir Decl. Ex. Q, at pp. 3-7.

premises leased to PRFI and due to PRFI's own negligence, at least raised the possibility of coverage for Hinde under the PIIC Policy or thus triggered its duty to defend Hinde.[7] *See Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984) ("The duty to defend arises whenever the allegations in a complaint against the insured fall within the scope of risks undertaken by the policy, regardless of how false or groundless those allegations might be.").

---

[7] Underlying Action complaint, Gershweir Decl. Ex. I.

## II.    PIIC is not entitled to summary judgment based on its late-notice defense because its claimed right to summary judgment based on that defense rests in part on its false claim that it is not obligated to establish prejudice.

Evidently recognizing that it cannot establish as a matter of law that it was prejudiced by Hinde's delay in notifying it of Ramos's claim and the Underlying Action, PIIC boldly claims that, notwithstanding statutory mandate to the contrary and the complete absence of supporting case law, it has no obligation to establish such prejudice to defeat Technology's claim. As explained below, PIIC is wrong.

Insurance Law § 3420(a)(5) states, in relevant part, as follows:

[F]ailure to give any notice required to be given by such policy within the time prescribed therein shall not invalidate any claim by the insured, injured person or any other claimant, unless the failure to provide timely notice has prejudiced the insurer.

As PIIC correctly points out, § 3420(a)(5) abrogates the pre-existing common-law rule in New York that liability coverage is vitiated by an insured's breach of its policy's notice conditions even absent prejudice to the insurer resulting from the delay, as respects policies subject to the statute that were issued on or after January 17, 2009. *Mt. Hawley Ins. Co. v. Abraham Little Neck Dev. Grp., Inc.*, 825 F. Supp. 2d 384, 394 (E.D.N.Y. 2011). As PIIC also correctly points out, the common-law rule continues to apply as respects certain policy types exempted by the statute, which, as PIIC does not dispute, do not include the policy type at issue in this case. *See N.Y. Mar. & Gen. Ins. Co. v. Travelers Prop. Cas. Co. of Am.*, 485 F. Supp. 3d 398, 404 (S.D.N.Y. 2020).

But PIIC's claim that § 3420(a)(5) does not apply simply because the party challenging an insurer's late notice-defense is another insurer is wrong. Although the prejudice statute has now been effective for over 23 years, PIIC fails even to purport that any court has ever ruled that the statute does not apply in intra-insurer cases. PIIC also

fails to alert the Court that courts have applied the statute to find that prejudice is indeed required in such cases. *See*, *e.g.*, *Liberty Ins. Underwriters, Inc. v. Greenwich Ins. Co.*, No. 16-CV-4293, 2018 WL 4100489, *2 (E.D.N.Y. Aug. 28, 2018); *Wausau Underwriters Ins. Co. v. Old Republic Gen. Ins. Co.*, 122 F.Supp.3d 44, 55 (S.D.N.Y. 2015).

Ignoring directly relevant case law, PIIC instead relies on case law interpreting an entirely distinct provision of the statute—§ 3420(d)(2), requiring insurers seeking "to disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state," to "give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant" under penalty of preclusion—to support its claim that § 3420(a)(5) does not apply in contribution claims between insurers. The analogy PIIC seeks to draw, however, apart from lacking any precedential support, does not withstand reasonable scrutiny.

In *Bovis Lend Lease LMB Inc. v. Royal Surplus Lines Insurance Co.*, 27 A.D.3d 84 (1st Dep't 2005), the court explained in detail the basis for its conclusion that § 3420(d) does not apply to such claims, i.e., that an insurer seeking to recover from a co-insurer costs incurred defending or indemnifying the mutual insured may not rely on the defendant insurer's failure to comply with the statute to defeat that insurer's otherwise valid coverage defense. Per the below, the *Bovis* court relied on the narrow purpose of the subsection as reflected in the statutory language, the context of the statute as a whole, as well as the subsection's particular legislative history, to reach that conclusion:

> A statute must be construed so as to effectuate the intent of the Legislature, and the clearest indicator of the legislative intent is the plain meaning of the language. Here, the statute clearly mandates that an insurer must as soon as is reasonably possible give written notice of disclaimer of liability or denial of coverage for death or bodily injury under a liability

policy to "the insured and the injured person or any other claimant." Consistent with the purpose of liability insurance, i.e., to provide coverage for liability to third parties, the plain meaning of the quoted language is that an insurer must give prompt written notice of disclaimer of liability or denial of coverage not only to the insured but also to any party that has *a claim against the insured arising under the policy*. The purpose of § 3420(d) is to protect the insured, the injured person, and any other interested party who has a real stake in the outcome, from being prejudiced by a belated denial of coverage.

A review of the statutory language itself demonstrates that another insurer does not fall within the specified categories. National Union [the plaintiff insurer] is certainly not [the defendant insurer] Royal's insured, nor is it an injured person or other party (i.e., claimant) who has a claim against the insured arising under the Royal policy. No extended discussion is necessary for the elementary proposition that an insurer can have no liability claim against its own insured for the risk covered.

That § 3420(d) was never intended to apply to another insurer is buttressed by a review of the various other provisions of § 3420 and their emphasis on protecting the insured and those who have claims against the insured covered by the liability insurance policy in issue. For example, § 3420(a) requires that policies insuring against liability for injury to person or injury to or destruction of property contain certain standard provisions "or provisions which are equally or more favorable to the insured." Among these are the provision that where a judgment against the insured in an action for damages for injury, loss or damage remains unsatisfied after 30 days from service of the notice of entry on the insured's attorney, or the insured, and the insurer, an action may be maintained against the insurer (subd. [a][2] ). . . .

The language requiring the insurer to give written notice of disclaimer of liability or denial of coverage as soon as is reasonably possible" leaves no doubt that the Legislature intended to expedite the disclaimer process, thus enabling a policyholder to pursue other avenues expeditiously. The Legislature's Budget Report on the bill that ultimately became § 3420(d) (Governor's Bill Jacket, L. 1975, ch. 775) also evinces the Legislature's intent that § 3420(d) not be applied to insurers. The Report stated that "[t]he purpose of the bill is to assist a consumer or claimant in obtaining an expeditious resolution to liability claims by requiring insurance companies to give prompt notification when a claim is being denied." It continued:

> "This bill would prevent insurance companies from deliberately engaging in dilatory practices which inhibit the fair and expeditious resolution of liability claims. By expediting the disclaimer or denial process, the consumer is

11

able to pursue, at an earlier point in time, an alternative method of recovering liability damages."

Approval was recommended on the ground that "[i]t is in the interests of protecting the consumer to prevent undue delay in the adjudication of cases involving liability insurance coverage, particularly where settlement fees are necessary to pay medical and legal expenses."

It is clear that the notice requirement of § 3420(d) is designed to protect the insured and the injured person or other claimant against the risk, posed by a delay in learning the insurer's position, of expending energy and resources in an ultimately futile attempt to recover damages from an insurer or forgoing alternative methods for recovering damages until it is too late to pursue them successfully.

Recognizing that these are not risks to which another insurer seeking contribution is subject, courts have held that § 3420(d) is not applicable to a request for contribution between coinsurers.

*Id.* at 90-92 (citations, internal quotation marks, and alteration marks omitted).

PIIC does not purport that there is any similarly compelling legislative purpose behind § 3420(a)(5) that would preclude it from applying where the party seeking its benefit is another insurer.

And though § 3420(a)(5)'s prejudice requirement may likewise be designed primarily to protect insureds, injured persons, and other claimants—i.e., by preventing insurers from denying such parties the benefits of coverage based on mere non-prejudicial reporting delay—the fact remains that even an insured, like Hinde here, that has successfully tendered coverage under its own policy may nonetheless be harmed by an additional insurer's coverage denial based on late notice because: (1) it reduces the amount of coverage available to pay the subject claim; (2) negatively impacts the insured's loss-history profile under its own policy and thus, potentially, its future insurance premiums, *see Ichaustegui v. 666 5th Ave. Ltd. P'Ship*, 268 A.D.2d 121, 127 (1st Dep't 2000), *aff'd*, 96 N.Y.2d 111 (2001); and (3) reduces the amount of coverage available

under its own policy to pay other claims, *see Jerusalem Ave. Taxpayer, LLC v. Liberty Mut. Ins. Co.*, 137 A.D.3d 600, 601 (1st Dep't 2016).

Moreover, a conclusion that § 3420(a)(5)'s prejudice requirement does not apply where the party seeking relief is a co-insurer would lead to absurd results. Per § 3420(d)(2), when an insured provides delayed notice, the insurer must promptly determine whether to disclaim coverage based on the delay. Even if the tendering insured is an additional insured with its own policy, and the insurer issuing that other policy provided the notice, if, as here, notice is provided before the pending action has resolved and before the tendering insurer has filed a claim to recover any past defense or indemnity costs, then the tendered-to insurer must take prejudice into account in making its coverage determination. Indeed, that is precisely what PIIC did here: in initially disclaiming coverage to Hinde, it relied on the fact that it had been prejudiced by Hinde's delay because, by the time the delayed notice was provided, a default judgment had been entered against Hinde (and had not yet been vacated).[8]

Under the unprecedented rule PIIC now proposes, whether or not, and to what extent, the prejudice standard still applies will then depend on the speed with which the tendering insurer pursues its claim relative to the speed with which the underlying action proceeds. For example, when Technology filed this action, the Underlying Action was still unresolved. Thus, although Technology included a claim for costs incurred to defend and indemnify Hinde, it also included a claim for declaratory relief in Hinde's favor, i.e., requiring PIIC to defend and indemnify Hinde moving forward.[9] If the Underlying Action had not yet settled when these motions were filed, then the logical, but absurd,

---

[8] Paniccia Decl. Ex. F.
[9] Paniccia Decl. Ex. D, at First Cause of Action and Second Cause of Action.

consequence of PIIC's proposed rule would be that the prejudice standard would apply to the claim for declaratory relief but not to the claim for monetary relief.

Furthermore, even if the New York state appellate courts' application of § 3420(d)(2) in co-insurer cases were somehow relevant to this issue, contrary to PIIC's contention, those courts are not unified behind the proposition that it does not apply in such cases. To wit, only the First Department has consistently applied the rule while the Second Department has declined to adopt it. *See Harco Constr., LLC v. First Mercury Ins. Co.*, 190 A.D.3d 831 (2d Dep't 2021). The *Harco* court stated, in relevant part:

> Contrary to [defendant insurer] FMIC's contention, the Supreme Court properly determined that FMIC is obligated to reimburse Harco on behalf of its insurer, Mt. Hawley, for the defense and indemnification costs sustained as a result of FMIC's invalid disclaimer of coverage to Harco. At the time Harco filed its initial complaint in this action, there had been no settlement of the underlying personal injury actions, and, despite the Supreme Court's incorrect determination that FMIC's disclaimer was valid as to Harco, which was reversed by this Court on the prior appeal, FMIC is required to defend and indemnify Harco in those actions. That, in the interim, Mt. Hawley, acting on Harco's behalf, provided a defense in those actions and settled one of them in an amount above the limits of the FMIC policy did not relieve FMIC of its obligation. FMIC's contention that it is not obligated to reimburse Harco on behalf of Mt. Hawley because this action is, in effect, one for contribution and/or indemnification asserted by Mt. Hawley as the real party in interest, is without merit.

*Id.*

Finally, even if PIIC were not required to prove prejudice, as explained in Technology's memorandum of law supporting its summary-judgment motion, PIIC waived its late-notice defense anyway by omitting the defense from its second disclaimer letter, which it sent after the event prompting it to include the defense in its first letter—the default judgment against Hinde—had been undone.[10]

---

[10] See Technology Mov. Mem. of Law (Docket No. 49), at pp. 20–22.

For all these reasons, PIIC is not entitled to summary judgment based on its late-notice defense.

### III.    PIIC is wrong that Technology may not seek reimbursement from it.

PIIC also claims that Technology may not recover against PIIC the amounts incurred to defend and indemnify Hinde in the Underlying Action because Technology did not directly make those payments, instead acting through its general managing agent, AmTrust North America, Inc., whose name is on the account from which the payments were made.

But PIIC ignores the critical fact that, per Technology's 30(b)6) witness, Lowell Aptman, that account was funded by Technology.[11] "An agent who receives money or other thing from his principal to pay or transfer to another person is not thereby liable to the other," Restatement (Second) of Agency § 342 (1958), and thus logically does not supplant the principal in any other capacity as respects such funds, including as subrogee.

PIIC also ignores that Tower, through its representatives, entered into agreements with Technology, its reinsurer as respects certain policies such as the Tower Policy, assigning its rights and duties under those policies to Technology, thus effectively making Technology the insurer.[12] *See N.J. Mfrs. Ins. Grp. v. Narrangasset Bay Ins. Co.*, No. 17-011112, 2018 WL 6427868, *1 n. 1 (D. N.J. Dec. 7, 2018) (treating Technology as such under a policy issued by an insolvent insurer); *USF Ins. Co. v. Clarendon Am. Ins. Co.*, No. 05-04138, 2006 WL 8434386, at *4 n. 20 (C.D. Cal. Feb. 22, 2006) (describing reinsurer as "the effective liability carrier" based on cut-through endorsement and

---

[11] Aptman Mov. Decl. ¶¶ 8; 9; Aptman dep. tr., Paniccia Decl. Ex. P, p. 54:13, as modified at Errata Sheet, p. 72C:7-8.

[12] Commercial Lines Cut-Through Quota Share Reinsurance Agreement dated January 3, 2014 ("the Reinsurance Agreement"), Aptman Decl. Ex. 2, at Art. 2, § 2.2(a), p. 7; Art. 4(a), pp. 13-14; CastlePoint National Insurance Company Conservation Agreement dated July 28, 2016 ("the Conservation Agreement"), Aptman Decl. Ex. 3, at § 9.1.11, p. 39.

insurer's insolvency). As the party contractually obligated to pay under the Tower Policy, Technology cannot properly be characterized as a "volunteer," as PIIC alleges.

PIIC also ignores that such use of a general managing agent to pay claims on the insurer's behalf is standard practice in the insurance industry. *See Am. Home Assur. Co. v. Starr Tech. Risks Agency, Inc.*, No. 600263/06, 2006 WL 304746, *1 (Sup. Ct. N.Y. Cty. Feb. 6, 2006) ("The role of a general managing agent is to market the insurers' policies, underwrite and issue policies, collect premiums, adjust and pay claims, negotiate reinsurance agreements, all on behalf of the insurance company.").

PIIC's other arguments are rendered irrelevant by these ignored facts, but Technology briefly addresses them anyway. PIIC relies on the text of the Tower Policy's Cut-Through Endorsement stating that if Tower "is declared insolvent by a court of competent and is unable to pay loss(es) under the Policy occurring on or after the Effective Date of this endorsement (a "Covered Loss"), [Technology] will be liable to the Insured for such Covered Loss and will make payment directly to the Insured, subject to the terms, limitations and conditions contained in the Policy."[13] PIIC claims that Technology failed to comply with these terms by failing to make payment directly to Hinde or to determine whether Tower was able to make those payments before those payments were made.

But PIIC ignores that the endorsement's reference to a "Covered Loss" payable directly to the insured subject to the policy's terms necessarily refers only to first-party property losses, i.e., those losses payable directly to the insured per the Tower Policy's terms. By contrast, a liability claim against the insured, such as Ramos's claims against Hinde in the Underlying Action, does not involve such a loss and instead requires

---

[13] Tower Policy, Paniccia Decl. Ex. A, at Bates No. D01521.

payments to third parties, i.e., payment of fees and expenses to those providing defense-related services to the insured and of settlement or judgment payments to the third-party claimant. The endorsement thus does not apply here, apart from confirming, per the Reinsurance Agreement cited above, that the Tower Policy is among those policies reinsured by Technology for which Technology agreed to act in Tower's stead as the insurer liable in all respects, thus including with respect to both first-party property and third-party liability claims.[14]

PIIC also alleges that since the order liquidating Tower provides the Liquidator (the Insurance Commissioner of the State of California) with discretion "to pay . . . some or all claims, expenses, liabilities and/or obligations of CastlePoint [into which Tower was merged], in whole or in part, accruing prior and subsequent to his appointment as Liquidator" [15] somehow rendered payment under the AmTrust account funded by Technology improper. But PIIC ignores that, per Mr. Aptman, policies reinsured by Technology under the Reinsurance Agreement, like the Tower Policy, are not subject to the Liquidation Order, consistent with the fact that the agreement was designed to protect any obligation to pay under those policies subject thereto by transferring Tower's obligations to Technology, a fully solvent party, before Tower was liquidated.[16] In any event, there is no dispute that the Liquidator did not pay any of the sums claimed by Technology here.

PIIC's attempt to avoid responsibility for a claim it was obligated to pay cannot succeed.

---

[14] Reinsurance Agreement, Aptman Decl. Ex. 2, at Art. 2, §§ 2.1(a), 2.2(a), p. 7; Art. 4(a), pp. 13-14.
[15] Liquidation Order, Paniccia Decl. Ex. M, at ¶ 15, p. 5.
[16] Aptman Mov. Decl., ¶ 7; Aptman dep. tr., Paniccia Decl. Ex. P, p. 42:19-21, as modified at Errata Sheet, p. 72A:10-20.

**Conclusion**

Based on the foregoing, Technology respectfully requests that this Court issue an order denying PIIC's motion; and that it grant such further relief as the Court deems just and proper.

Dated:      New York, New York
            May 24, 2022

                            Respectfully submitted,

                            KENNEDYS CMK LLP

                            By: _____
                                Max W. Gershweir
                                Attorneys for Plaintiff
                                570 Lexington Ave. – 8th Floor
                                New York, New York 10022
                                646-625-4000